D. H. HEBNER v. GREAT NORTHERN RAILWAY COMPANY.

December 8, 1899.

Nos. 11,845—(129).

**Libel—Record of Railway Employee—Publication.**

Defendant railroad company kept a book in which was written a record of each of its employees, and, if discharged, for what reason. Against plaintiff's name in this book, and under the heading of "Remarks," appeared the words: "Dismissed; insolent and abusive to company's patrons." The only publication of the words was that, when plaintiff applied to the superintendent of telegraphs for what is called a "service card," the book was brought to the office, and read by one clerk in the presence of another and the superintendent and the plaintiff, that the card might be filled out. This was done, and the card, as filled, and on which appeared the derogatory words, was signed by the superintendent, and then handed to plaintiff. The record was kept for the information of those whose business it was to employ men for defendant's service. *Held*, as a question of law, that the communication was of a privileged character, and made upon a privileged occasion; the prima facie effect thereof being to overcome and rebut the quality or element of malice, and to cast upon plaintiff, in an action for libel, the necessity of showing malice in fact.

78 M.—19

### Privileged Communication.

A communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel. Actual malice must be proved, before there can be a recovery, and in the absence of such proof the plaintiff cannot recover.

### Malice—Want of Probable Cause.

*Held*, in the case at bar, that the evidence failed to show want of probable cause, such as would justify a reasonably prudent man in making the entry, and that the fact of malice, essential to plaintiff's recovery, was not established.

Action in the district court for Ramsey county to recover $15,000 damages for libel. The case was tried before Otis, J., who directed a verdict in favor of defendant; and from an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*T. J. McDermott* and *S. L. Pierce*, for appellant.

*C. Wellington*, for respondent.

COLLINS, J.

Action for libel, and at the conclusion of the trial a verdict was directed and returned in favor of the defendant corporation.

Plaintiff had been in its employ at Browns Valley, as a telegraph operator and station agent, for about four years prior to the alleged publication, and was then discharged. As was the custom of defendant with all of its employees, a record of plaintiff's service, and the reason for his discharge, was kept in the general office, and from the record it appeared that he had been insolent and abusive to the patrons of defendant company. It was also the custom of the company to issue, on the request of any person who had left its employ, what was known as a "service card," in which appeared a part of this record, and such a card was issued to plaintiff. It was signed by the superintendent of the defendant's telegraph lines, and under the heading of "Remarks" were the words: "Dismissed; insolent and abusive to company's patrons." It was held below that there had been a sufficient publication of these words by reading the written record in the presence of clerks in the superintendent's office

when plaintiff applied for his service card, and also that they were libelous on their face, if untrue; and it is conceded on this appeal that the only question to be determined is whether the evidence adduced at the trial would have warranted the jury in finding that the defendant, when publishing these words of and concerning plaintiff, was actuated by malice, or did otherwise than a reasonably prudent man would have done under the same circumstances.

It was undisputed that the object of the defendant in keeping a record of each of its employees, and, in case men had been discharged, for what reason, is that those having to employ may be properly advised of the qualifications or disqualifications of all who have theretofore been in the defendant's service.   The absolute propriety and necessity of having this information, where it is accessible to those whose work it is to select the hundreds of men capable of properly performing arduous and responsible duties in connection with defendant's business as a common carrier, is obvious.   It was, also undisputed at the trial that the real purpose of the service card is to assist men to obtain employment when going from one company to another, although such a card might prove a very serious obstacle to securing a new position when presented by a man discharged for cause or supposed cause, because the reason for such discharge would be stated.   It is also beyond question that such a card may or may not be shown by one seeking employment, for this is a matter optional with the holder.

It stands conceded that this was a highly-privileged communication, and that, in the absence of express malice on its part, there could be no recovery as against defendant.   It was made upon a subject-matter in which the person communicating it had a deep interest, as well as a duty to perform, and was made to a person having a corresponding interest and duty.   If one of defendant's servants had demonstrated his unfitness for a position held by him, it was for its interest, as well as for the interest of the public, that steps should be taken which would render the servant qualified and capable, or that he be dismissed.   It would not only be for the interest of the company to remedy the evil, and to act so as to stop all future complaints, but it would be a matter of duty to the public. The record was made in one of the books of the corporation, kept

for its own information, and the only publication complained of was when the record was communicated by one of the clerks employed by defendant in the office of the telegraph superintendent to another clerk; both being interested, and both acting strictly within the line of duty, and also acting that they might have information upon which to fill out the card which plaintiff had requested might be delivered to him. There was no undue publicity, or even public dissemination of the contents of the book; and there is nothing in the record before us which indicates that care was not taken to confine this information to such persons as were directly interested, and whose duty it was to know the reason for plaintiff's dismissal from defendant's service. It is conclusively established that there was no wanton disregard of plaintiff's feelings or welfare.

The communication being of a privileged character, and having been made on a privileged occasion only, the prima facie effect was to overcome and rebut the quality or element of malice, and to cast upon plaintiff the necessity of showing malice in fact; that is, that the defendant was actuated by ill will in what it caused to be done and said, with a design causelessly and wantonly to injure the plaintiff. The law is that a communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel. Actual malice must be proved, before there can be a recovery, and in the absence of such proof the plaintiff cannot recover. Briggs v. Garrett, 111 Pa. St. 404, 2 Atl. 513; Missouri v. Richmond, 73 Tex. 568, 11 S. W. 555; Bacon v. Michigan, 66 Mich. 166, 33 N. W. 181.

The plaintiff's efforts to show malice on defendant's part were confined to testimony which counsel claim tended to show that the charge of insolence and abuse towards those who patronized the company was false, and also to evidence of the existence of certain circumstances which counsel contend indicate bad faith when making the record, and also when publishing it. The charges of bad behavior which were lodged with defendant company were with respect to plaintiff's conduct towards commercial travelers who had business at his station; and plaintiff's proofs, aside from his unqual-

ified denial (to which reference will be made later) of having been insolent and abusive, and the testimony of a man who had worked with him for a short time, were from residents of the town who had from time to time seen him at work. But counsel admit that on the evidence the jury would have been warranted in finding either way upon the issue as to the truth or falsity of the charges. And it is quite certain that on this testimony as to his general conduct towards patrons a jury would not have been justified in finding that plaintiff had not been impudent when dealing with traveling men, if they had not misrepresented him. And there was absolutely nothing in this class of testimony, taken by itself, which would tend to show that defendant did not have probable cause to believe these charges to be true when making its record.

The fact was that, after the claim had come to defendant that plaintiff was treating its patrons with insolence, the traveling freight agent was ordered to investigate, and for that purpose visited the plaintiff at Browns Valley. He there talked with plaintiff, informing him that he was accused of being insolent and abusive in his dealings with traveling men. This circumstance the plaintiff admitted, and also that he was then told by the agent that he must be more civil and courteous in the future, if he expected to retain his place. The agent had testified that, in response, plaintiff had answered that he might have been impatient and uncivil, but that he would try to do better; and, when plaintiff was asked if he had not so responded, his reply was that he "could not exactly remember." He would not deny that he did so answer when questioned by the traveling freight agent. The evidence was, however, that the caution and reprimand did no good, and that on account of the continued complaints, which were also investigated, the plaintiff was afterwards discharged, upon the report and advice of the agent. It is evident from this testimony that the plaintiff did not deny the truth of the charges when he was told that they had been made, and he cannot now be heard to say that the defendant itself did not believe them to be true when it dismissed him from its employ.

But this was not all. Howard, one of the traveling men who had

complained of plaintiff's conduct, had just cause for charging him with incivility, on plaintiff's own statement. This man had reached the station late, and the bus driver was talking with plaintiff about checking his baggage. The latter was at his desk, the driver at the ticket wicket, a few feet distant, while Howard stood a few feet beyond. The plaintiff at first declined to issue checks, and then stated that a man who would come so late "ought to be kicked off the depot platform." It is urged that perhaps this was not heard by Howard, who was further away from the plaintiff than was the driver, to whom the statement was made. Howard was not at the trial, and possibly, though close by, did not hear the remark. But it makes no difference what person was abused, or concerning whom the plaintiff was insolent. He was none the less impudent and insulting because his remark was directly addressed to the bus driver, instead of to the owner of the trunks. There was nothing in the evidence bearing upon the truth or falsity of the charges which would have justified the jurors in finding that the defendant did not act in perfect good faith. Nor did the circumstances relied on by counsel tend to show malice. Good faith in the premises would require that defendant exercise reasonable care, and nothing more, and there were no circumstances on which a claim could be maintained that there was an absence of this care.

It has been urged by counsel that because the traveling freight agent declined to furnish plaintiff with the names of persons who had complained, and to give him a hearing at which he should be confronted with his accusers, and because the agent made no inquiries of the residents at Browns Valley, it was for the jury to say whether the defendant used reasonable care. These are the circumstances appearing in evidence, and before referred to. It would seem somewhat singular if it should be held that the failure to have an investigation, at which plaintiff could be heard and the witnesses examined, was evidence that defendant had not acted with reasonable care, or that there was an absence of reasonable care because the traveling freight agent refused to plunge the patrons of the road into a quarrel with plaintiff, as would have been the result if their names had been furnished, or because he failed to inquire of the residents of Browns Valley as to plaintiff's treat-

ment of certain traveling men whose complaints he was investigating. That defendant might act in good faith, and with the best of motives, did not demand of it any such care as that. And it must also be remembered that plaintiff had practically admitted the charges against him when questioned by the agent, and further that in one case, at least, he stood convicted of insolence on his own statement as to what occurred. If, on his own admissions, the charges seemed to be true to some extent, what further was necessary in the way of investigation, or what more was required in the exercise of reasonable care?

In conclusion, on this question of malice, it should be stated that there is no claim here that defendant's employees (the men who had observed plaintiff's conduct and had reported it, or those who investigated the charges, including the agent, and informed the company of the result of their investigations) manifested the slightest ill will or disposition to be unfair towards the plaintiff, and no claim that the clerks in the office of the superintendent of telegraphs, or the superintendent himself, exhibited anything but the kindliest spirit towards plaintiff when making the publication of which he complains. We quite agree with the learned trial judge, who said "that the evidence fails to show want of probable cause such as would justify a reasonably prudent man in making the entry, and that the fact of malice, essential to plaintiff's recovery, was not established."

Order affirmed.