Margaret **WIRIG**, Respondent,

v.

**KINNEY SHOE CORPORATION**, Appellant.

No. C5–89–653.

Court of Appeals of Minnesota.

Dec. 5, 1989.
Review Granted Jan. 23, 1990.

Lawrence R. Altman & Sandra F. Gilbert, Courey, Schwinn & Kodadek, P.A., Minneapolis, for respondent.

Joseph J. Roby, Jr., Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for appellant.

Heard, considered and decided by PARKER, P.J., and SHORT and GARDEBRING, JJ.

## OPINION

PARKER, Judge.

Respondent Margaret Wirig sued her former employer, appellant Kinney Shoe Corporation, for sexual harassment and battery by the same co-employee and for defamation by certain supervisors. Kinney appeals the trial court's denial of a new trial following a judgment that it was liable for both sexual harassment under the Minnesota Human Rights Act and for common law battery and awarding Wirig damages under both claims. Although Kinney admits its liability for sexual harassment, it asserts the trial court erred in finding that recovery under the statutory claim does not preclude recovery under the common law battery claim based on the same acts, and in awarding punitive damages or failing to remit the punitive damage award. Wirig seeks review of the trial court's denial of damages under the defamation claim. She contends the trial court erred in finding that Kinney's managers had a qualified privilege to publish the defamatory matter to her co-employees. We affirm in part, reverse in part and remand.

## FACTS

Margaret Wirig and Mark Thorson were co-employees at the Kinney shoe store located at Southdale Shopping Center. They worked together over a period of four months, until Wirig was fired. Thorson was a nonsupervisory, nonmanagerial salesperson.

The trial court found that on repeated occasions Thorson made statements to and about Wirig and exhibited conduct toward her of a sexual nature. The statements included comments about her body, offensive sexual names, repeated requests for dates with her after she expressed her refusal to date him, and discussions of what he would like to do to her sexually. On a number of occasions and without Wirig's consent, Thorson kissed her and touched her in sexually offensive ways.

Kinney's managers were aware of this harassment. Four managers at different times observed Thorson pinch, pat, kiss or

put his arm around Wirig and direct sexually offensive comments to her. Co-employees also testified that they observed such conduct and complained to Kinney managers about Thorson's offensive behavior toward Wirig. Over a period of four months, she complained to several managers and asked them to stop him from touching her and asking her out on dates.

On only one occasion did a Kinney manager confront Thorson about his behavior toward Wirig. During the first two months they worked together, an assistant manager witnessed Thorson either pinch or pat Wirig on her backside. He pushed Thorson up against a wall in the storeroom and threatened to fire him the next time he harassed her. This inappropriate use of physical force had no effect; Thorson continued to harass her.

Another assistant manager admitted that Wirig complained to him about Thorson on at least three occasions. He described Thorson as a "forward sort of guy" and said he saw him grabbing Wirig's arms, patting her and making comments about her physical appearance. When he reported to manager Ed Schultz that there were problems between Thorson and Wirig, Schultz told him, "you are going to have to get them guys working together * * * we are all a team and you have to have a well-oiled machine in order for everything to run smoothly."

Thorson was never disciplined for harassing her. Kinney managers never made an investigation to discover whether she was in fact sexually harassed.

At the time Wirig worked for Kinney, the company had no sexual harassment policy in effect. Kinney had not trained any of its managers to identify or deal with sexual harassment and had not instructed its employees about sexual harassment.

In late July 1985 Kinney caused an audit to be performed at its Southdale store. During the audit Thorson told manager Schultz and two assistant managers that the audit would be bad. He said he had seen Wirig and two others steal a carload of shoes. Schultz, who was being transferred out of the store, testified that he did not take Thorson's accusation seriously. After the audit showed a substantial shortage, the assistant managers told the new store manager that they had witnesses to the theft of shoes.

Without performing an investigation and without identifying the witnesses, the manager allowed the assistants to call a meeting of all store employees, including nonsupervisory staff, for the purpose of punishing and making an example of the three accused employees. At this meeting the managers told the employees there was a shortage due to employee theft and the responsible people would be punished. After no one offered any comments, the managers singled out and publicly fired Wirig and two others. The new manager testified that he assumed Wirig would be embarrassed and humiliated by the manner in which she was fired.

As a result of her experience at Kinney, Wirig was diagnosed by her treating psychologist as having suffered from either post-traumatic stress disorder or adjustment disorder from a depressed mood. The psychiatrist testified that Wirig continued to exhibit severe symptoms two years after she worked for Kinney. The physical and emotional distress was characterized by vomiting, loss of 27 pounds, sleep disturbances and nightmares.

At trial the court used a jury, impaneled because of Wirig's common law claims, in an advisory capacity on the sexual harassment claim. Special verdict questions relating to each claim were submitted to them. The jury found Kinney liable for sexual harassment and battery. They found Kinney had defamed Wirig, but that the defamatory statement was not made with actual malice. The jury determined the following damages:

Compensatory Damages:
| | |
|---|---|
| Sexual Harassment | $ 30,000 |
| Battery | $ 14,000 |
| Defamation | $ 10,000 |

Future Damages:
| | |
|---|---|
| Sexual Harassment | $ 7,100 |

Punitive Damages:
| | |
|---|---|
| Sexual Harassment | $ 5,000 |
| Battery | $100,000 |

Defamation $225,000

The court allowed recovery under both the statutory claim for sexual harassment and the common law claim for battery. Because the court determined that Kinney had a qualified privilege and the jury found no actual malice, there could be no recovery for defamation.

## ISSUES

1. Did the trial court err in finding that recovery for sexual harassment under the Minnesota Human Rights Act, Minn.Stat. § 363.03 (1986), did not preclude recovery for common law battery when both claims were based on the same acts?

2. Did the trial court err in finding that Kinney had a qualified privilege to call a meeting of all store employees and accuse Wirig of stealing?

3. Did the trial court err in finding that the evidence supported the jury's award of punitive damages and in denying a remittance of damages?

## DISCUSSION

### I: Preemption

Kinney argues that the Minnesota Human Rights Act expressly preempts recovery under an alternate claim which is supported by the same facts. Statutory interpretation based on undisputed facts is a question of law, which this court reviews de novo. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

Minn.Stat. § 363.11 (1986), the preemption section, provides in part:

[A]s to acts declared unfair by sections 363.03 and 363.123, the procedure herein provided shall, while pending, be exclusive.

Minn.Stat. § 363.03 provides:

[I]t is unfair employment practice * * * [f]or an employer because of * * * sex * * * to discriminate against a person with respect to * * * conditions * * * of employment.

*Id.,* subd. 1(2)(c) (1986). Sexual harassment directed at an employee by a fellow em-

ployee may constitute sex discrimination under Minn.Stat. § 363.03. *Continental Can Company, Inc. v. State,* 297 N.W.2d 241, 245 (Minn.1980). The statute defines sexual harassment to include

unwelcome sexual advances, requests for sexual favors, *sexually motivated physical contact* or other verbal or physical conduct or communication of a sexual nature * * *.

Minn.Stat. § 363.01, subd. 10a (1986) (emphasis added).

A battery is an intentional, unpermitted, offensive bodily contact with another. *Paradise v. City of Minneapolis,* 297 N.W.2d 152, 155 (Minn.1980). An employer may be found liable for the battery perpetrated by its agent if (1) the employer approves of or should reasonably have foreseen the battery, and (2) the battery occurred at a place and during a time related to the employment. *Marston v. Minneapolis Clinic of Psychiatry,* 329 N.W.2d 306, 310–11 (Minn.1982).

From the definition of battery and the statutory definition of sexual harassment, it is clear that the Minnesota Human Rights Act makes it an unfair employer practice to subject an employee to battery of a sexual nature in connection with employment. Under the preemption section of the Act, a sexually motivated battery at work is an "act declared unfair by section 363.03."

Wirig's battery claim arose out of the same acts which give rise to the sexual harassment claim. The record is devoid of any unpermitted, offensive bodily contact other than the contact of a sexual nature at work. Although the bodily contact here amounted to a battery, it also is sexual harassment, an unfair act under the statute. There were many acts of sexual harassment shown not constituting battery; the gravamen of the complaint sounds in sexual harassment.

Wirig elected to forgo an administrative charge and proceed "directly to the district court" as authorized by Minn.Stat. § 363.14. For purposes of section 363.11,

the preemption section, she was following a "procedure herein provided."

An action is deemed pending until final judgment has been satisfied. *Halloran v. Blue & White Liberty Cab Co., Inc.*, 253 Minn. 436, 444, 92 N.W.2d 794, 799 (1958). From service of the original summons and complaint up to the verdict and the judgment, Wirig maintained parallel claims for sexual harassment *and* battery. At all times Wirig's chosen "procedure" under the Human Rights Act has been "pending." *County of Hennepin v. Brinkman*, 378 N.W.2d 790, 792–93 (Minn.1985) (a case awaiting appellate review is "pending").

A straightforward application of section 363.11 therefore leads us to conclude that Wirig's battery claim is preempted. She pursued a procedure under the Human Rights Act seeking redress for acts declared unfair by section 363.03. The Act provides that its procedure *"shall,* while pending, be exclusive." Minn.Stat. § 363.11 (1986) (emphasis supplied). "Shall" is mandatory; the exclusive procedure requirement of the act is not permissive or discretionary. Minn.Stat. § 645.44, subd. 16 (1986). Because Wirig's procedure under the Act was pending, that procedure was exclusive, barring her parallel battery claim arising out of the same acts which were unfair under the Act.

The trial court held that the Act does not preempt Wirig's action for battery because the court believed the statute's exclusive "procedure" provision was something different from an exclusive "remedy" provision. We believe this distinction to be without support.

Procedure mandates remedy and the two terms may be used interchangeably. Procedure is defined as the "mode of proceeding by which a legal right is enforced, as distinguished from the substantive law which gives or defines the right." *Black's Law Dictionary* 1083 (5th Ed.1979). Remedy is defined as the "means by which a right is enforced or the violation of a right is prevented, redressed or compensated. * * * The means employed to enforce a

right or redress an injury." *Id.* at 1163; *Ellingson & Associates, Inc. v. Keefe*, 410 N.W.2d 857, 860 (Minn.Ct.App.1987) (equating a particular "administrative remedy" with "a three-tiered review procedure"); *G. & T. Terminal Packing Co., Inc. v. Consolidated Rail Corp.*, 830 F.2d 1230, 1238 (3rd Cir.1987), *cert. denied*, 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988) ("[a] *remedy is a procedure* that gives to one who has been hurt * * * a right to seek actual or substituted redress" (emphasis supplied)).

The Minnesota Human Rights Act provides a new procedure for enforcing the right to redress sexual battery in the workplace. In establishing the statutory claim, the legislature established important differences in procedure and damages under the statutory claim. The common law claim allows virtually unlimited punitive damage awards; the act imposes an $8,500 limit ($6,000 when this case was tried). Minn. Stat. § 363.071, subd. 2 (1986). Common law allows jury trials; the act does not. Minn.Stat. § 363.14, subd. 2 (1986). The common law does not allow awards of attorney fees; the Act does. Minn.Stat. § 363.14, subd. 3 (1986). The common law does not allow civil penalties; the Act does. Minn.Stat. § 363.071, subd. 2. The common law does not allow treble damages as does the Act. *Id.* These features, coupled with the exclusive procedure provision, demonstrate the legislature's intent to treat Human Rights Act claims differently than common law claims. The balanced legislative scheme for handling Human Rights Act claims cannot be implemented if aggrieved parties can circumvent the balance by bringing parallel tort claims.

The trial court erred by submitting both claims to the jury. The battery award must be vacated, as well as the punitive damage award dependent on it.[1]

## II: Defamation

■ Kinney argues that because Wirig did not bring a motion for a new trial on the issue of qualified privilege and denial

---

1. For a recent case demonstrating construction of exclusivity provisions to avoid dual recoveries, *see Karst v. F.C. Hayer Co., Inc.*, 447 N.W.2d 180 (Minn.1989).

of the defamation claim, she has not preserved the issue for appeal.

The court directed the jury to assess damages regardless of its findings on malice; a new trial is not necessary if the trial court erred in ruling that Kinney's statements were protected by a qualified privilege. Because Kinney has established an independent basis for appeal, Wirig may seek review of an otherwise unappealable matter. *Kostelnik v. Kostelnik,* 367 N.W.2d 665, 669 (Minn.Ct.App.1985). Further, Wirig moved for amended findings on this issue; the court had an adequate opportunity to correct its error. *Sauter v. Wasemiller,* 389 N.W.2d 200, 201–02 (Minn.1986).

■ Whether a privilege exists with respect to a defamatory communication is a question of law which rests upon public policy considerations. *Lewis v. The Equitable Life Assurance Society,* 389 N.W.2d 876, 889 (Minn.1986). On review, this court does not give deference to the trial court's determination of a question of law. *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn.1977).

■ An employer may have a qualified privilege to publish a defamatory statement if the communication is made upon a proper occasion, from a proper motive, and based upon reasonable or probable cause. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 256–57 (Minn.1980). When a qualified privilege exists, actual malice must be proved for there to be a recovery for defamation. *Id.*

Wirig argues that the meeting of all employees for the purpose of punishing and firing her was not a proper occasion for application of a qualified privilege. Kinney claims that its publication to all the store employees is privileged because it was made in the context of an investigation. *McBride v. Sears, Roebuck & Co.,* 306 Minn. 93, 95–96, 235 N.W.2d 371, 374 (1975).

The evidence does not support Kinney's claim. The trial court found there was no "formal" investigation. The three managers met and discussed the shoe shortage.

They decided to call a meeting and fire the suspected thieves. They did not question the accused or any employees about the accusations against the three. The managers admitted they called the meeting for the purpose of firing and making an example of Wirig and her alleged accomplices.

The trial court cites *McBride* to support its finding that a meeting of supervisory and nonsupervisory personnel is a proper occasion, and punishment for alleged misconduct a proper purpose, for making a defamatory statement about a co-worker. *Id.* at 96, 235 N.W.2d at 374. However, the communications in *McBride* were made for the purpose of carrying on an investigation in addition to the punishment, and the communication was made only to the investigating agents and the plaintiff. *Id.* at 95–96, 235 N.W.2d at 373. We are cited to no precedent applying a privilege to defamatory statements made for punishment when both the publication and punishment were carried out, as here, before employees who are not necessary parties to the communication.

■ Minnesota follows the rule that a qualified privilege exists when the disclosure is limited to those employees who have a need to know. *See Frankson v. Design Space International,* 394 N.W.2d 140, 143 (Minn.1986). In *Frankson,* preparation of a defamatory letter and distribution of the letter to a personnel file and two company officers was held to be within the qualified privilege. The *Frankson* court listed two other Minnesota cases which followed a "need to know" qualification: *McBride,* 306 Minn. at 99, 235 N.W.2d at 375 (communication of suspicion to employees investigating misconduct was not actionable because "any publication to any of them was privileged"); *Hebner v. Great Northern Railway Co.,* 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899) (two clerks, "both being interested, and both acting strictly within the line of duty," transmitted the employee's termination record between each other). The Georgia Court of Appeals has described employees with a need to know as

those employees who have a need to know by virtue of the nature of their duties (such as supervisors, management officials, union representatives, etc.) and those employees who are otherwise directly affected either by the discharged employee's termination or the investigation of the offense leading to his termination.

*Jones v. J.C. Penney Company, Inc.*, 164 Ga.App. 432, 297 S.E.2d 339, 340 (1982).

■ Kinney managers deliberately published the defamatory matter at a meeting of all store employees. The admitted motive was to use Wirig as an example and get the message to her co-employees that the new manager would not tolerate shortages in future inventory audits. The statements were made in the context of a public firing, not an investigation. The co-workers were not necessary parties to the firing process. The manager admitted he assumed the public firing would embarrass and humiliate Wirig. We hold that publication for the purpose of punishment and making an example to nonmanagerial co-workers is neither a proper occasion nor motive to justify a claim of qualified privilege.

We distinguish this case from *Lee v. Metropolitan Airport Commission*, 428 N.W.2d 815 (Minn.Ct.App.1988), because the statement there was made by a fellow dispatcher, not a manager. Further, the statement in *Lee* was made with reasonable belief in its truth and the motive was proper—the topic of discussion was plaintiff's proposed promotion to lead dispatcher. *Id.* at 818.

■ Kinney's managers lacked probable or reasonable cause to believe that Wirig had stolen shoes. The trial court found the basis for Wirig's firing to have been statements from Thorson and Gloria Palm and the results of the internal audit. The trial record reflects that Palm did not observe the theft; her information was hearsay. Therefore, Thorson's testimony was the only evidence Kinney had which connected Wirig to the alleged theft. At the time Thorson accused Wirig of theft, she had been complaining about him and the managers knew he had been harassing her for months. Thorson had heard that Wirig wanted to sue either him or Kinney for harassment. Because Thorson's accusation was uncorroborated, we find as a matter of law that Kinney's managers could not reasonably have believed his accusation, without further investigation, that Wirig had helped steal the missing shoes.

### III: Punitive Damages

■ The trial court submitted to the jury special verdict questions on the issue of punitive damages for each claim. Absent a finding that the jury's decision was clearly erroneous, this court may not set aside the jury's determination that punitive damages apply to the facts of this case. *See Wilson v. City of Eagan*, 297 N.W.2d 146, 150 (Minn.1980) (determining whether punitive damages are appropriate under the particular facts of this case is within the jury's discretion); *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn.1984) (the court may set aside an answer to a special verdict question "only when it is perverse and palpably contrary to the evidence"). An appellate court cannot judge the credibility of a witness or the weight, if any, to be given to testimony. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 721 (Minn.1986). The court should not disturb a punitive damage award unless the award is so excessive that it is unreasonable. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 259 (Minn.1980).

Kinney argues that the evidence is not sufficient to meet the "clear and convincing" burden of proof standard necessary to an award of punitive damages in finding that Kinney was willfully indifferent to the rights of Wirig. Minn.Stat. § 549.20, subd. 1 (1986). Kinney notes that during trial the judge commented that in his view plaintiff had not presented evidence sufficient to establish a prima facie case for punitive damages. In his order the trial judge acknowledged this, but concluded that the jury had properly evaluated the credibility of witnesses, weighed the evidence and decided that Kinney's managers had acted with willful indifference to Wirig's rights.

The record reflects that the trial court instructed the jury that the correct burden of proof was clear and convincing evidence. The court properly adopted the jury's findings.

Kinney contends this court must give little deference to the trial court's findings in awarding punitive damages. It cites *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 835 (Minn.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1988), approving the statement that the court should exercise "close control over the imposition and assessment of punitive damages." However, *Hodder* does not abrogate the "clearly erroneous" standard of review. That court accepted the underlying findings of a jury. Because several of the jury's findings were contradictory, the *Hodder* court rejected its computation of punitive damages as being clearly erroneous.

Inasmuch as we reverse the battery verdict and consequently vacate both the compensatory and punitive damages awarded therefor, we need not address the punitive damage award for battery.

■■■ A. *Punitive damages for sexual harassment.* The evidence supports the trial court's finding that Kinney acted with willful indifference to Wirig's rights. All but one manager observed Thorson on several occasions pinch or pat Wirig on her buttocks, call her sexually offensive names, put his arm around her, or ask her out on dates. Four managers admitted that Wirig complained to them about Thorson's unwanted attention and touches. The harassment continued for the four months that Wirig and Thorson worked together at Kinney.

All managers agreed that Kinney had no policy on sexual harassment, nor did Kinney train them to identify and prevent such harassment. There is no evidence, other than one physical attack, that Kinney took any positive action to investigate the nature of Wirig's complaints or to protect her. The trial court found, by clear and convincing evidence, that Kinney acted with willful indifference to Wirig's rights.

Kinney claims the evidence does not support the necessary finding that Kinney or its managers ratified or approved Thorson's actions. Minn.Stat. § 549.20, subd. 2 (1986). Kinney contends that it cannot ratify or approve the acts of an agent by implication. This is not the law in Minnesota.

An employer may impliedly ratify or approve the acts of an employee by failing to discharge or even to reprimand an agent for illegal activity. *Tennant Company v. Advance Machine Co.*, 355 N.W.2d 720, 724 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Jan. 11, 1985). Thorson's acts of battery and harassment were illegal; this is an appropriate case in which to apply implied ratification or approval. As we noted in *Tennant*, punitive damages are a valuable check when a master is careless of his servant's illegal acts. *Id.* at 723.

The trial court instructed the jury on the necessity of determining ratification or approval. Although Wirig complained to Kinney's managers, each manager observed and allowed the harassment to continue unchecked. The only manager who confronted Thorson acted inappropriately and committed an offense by using physical force against him. This single direct action had no effect. This incident illustrates the dilemma faced by a young manager observing an incident of gross sexual harassment, but who was without the guidance that clear company policy and training might have afforded him. Thorson continued to harass Wirig; managers continued to observe this harassment without disciplining him for any of the acts against her.

The trial court awarded the statutory maximum punitive damages ($6,000) for sexual harassment. Minn.Stat. § 363.071, subd. 2. We do not find this amount to be excessive.

■■■ B. *Punitive damages for defamation.* The evidence supports the jury's finding that Kinney acted with willful indifference to Wirig's rights when its managers defamed her. Although the managers knew Thorson was reputed to be a braggart and liar and that he had been harassing Wirig for months, they accepted his

uncorroborated accusation and fired her for stealing. Without performing an investigation or asking her to explain, the managers called a meeting of her co-workers for the purpose of punishing her, knowing it would humiliate and embarrass her. We cannot say the jury committed clear error in finding that Kinney's managers acted with willful indifference to Wirig's rights.

Kinney cites *Hodder* for the contention that the court should remit punitive damages because the amount of damages is disproportionate to the egregiousness of the conduct. *Hodder*, 426 N.W.2d at 837. That case is not determinative. The 68 percent reduction of damages in *Hodder* was mostly attributable to errors in calculation and in mistaking certain conduct as egregious. We find no such errors here. Further, the decision in *Hodder* entailed a reduction from $12.5 million to $4 million. The punitive damages here are substantially less.

Minn.Stat. § 549.20, subd. 3 (1986), provides:

> Any award of punitive damages shall be measured by those factors which justly bear upon the purpose of punitive damages, including * * * the attitude and conduct of the defendant upon discovery of the misconduct, the number and level of employees involved in causing or concealing the misconduct, the financial condition of the defendant, and the total effect of other punishment * * *.

The following facts are relevant factors for determining the amount of punitive damages for defamation: (1) Without performing any investigation into the truth of the theft allegation, the managers planned a public punishment, knowing it would humiliate and embarrass Wirig. A reasonable jury could find that punitive damages are appropriate to punish and deter this sort of managerial attitude and conduct; (2) Three managers were involved in defaming Wirig. This is sufficient to meet the number and level of employee involvement factor; (3) The trial court had evidence before it which substantiated that Kinney, a multimillion-dollar corporation,

could afford to pay the punitive damages, $225,000; and (4) Kinney does not face any other liability for defaming Wirig; the damage award is not cumulatively excessive. Substantial punitive damages should certainly alert Kinney to the need to train its managers to follow an appropriate procedure which protects, rather than totally ignores, the rights of its employees. In light of these factors, we cannot find the punitive damage award excessive or unreasonable.

### IV: Costs and Civil Penalty

■ When a judgment is for the recovery of money, preverdict interest shall be computed as provided by Minn.Stat. § 549.09 (1986):

> Except as otherwise provided by contract or allowed by law, preverdict or prereport interest shall not be awarded on the following:
>
> \* \* \* \* \* \*
>
> (3) judgments for future damages;
> (4) punitive damages, fines, or other damages that are noncompensatory in nature; .
>
> \* \* \* \* \* \*

*Id.*, subd. 1(b). The trial court ordered preverdict interest computed on compensatory, future and punitive damages. Because preverdict interest applies only to Wirig's pretrial damages and not to punitive or future damages, we must remand to the trial court to recalculate the interest award.

The trial court awarded costs pursuant to Minn.Stat. § 549.04 (1986), which provides:

> [T]he prevailing party * * * shall be allowed reasonable disbursements paid or incurred, including fees and mileage paid for service of process by the sheriff or by a private person.

Because we vacate that portion of the judgment which assesses damages for battery, the trial court has authority to determine whether changes in its award of costs in the district court are now appropriate.

■ The Minnesota Human Rights Act provides that the judge "shall" order any party found to be liable for unfair acts

under section 363.03 to pay a civil penalty to the state. Minn.Stat. §§ 363.14, subd. 2; 363.071, subd. 2 (1986). The trial court did not assess a civil penalty because it determined that punitive damages under the statutory and common law battery claims were sufficient. The established rule of construction is that the term "shall" is mandatory. Minn.Stat. § 645.44, subd. 16 (1986). Therefore, the trial court erred in failing to award civil damages.

 The trial court file does not show the required notification of the attorney general. Minn.Stat. § 363.071, subd. 2(b) (1988), provides:

> The * * * judge shall cause the findings of fact, conclusions of law and order to be served on the respondent personally, on the charging party by registered or certified mail, and *shall furnish copies to the attorney general* and the commissioner.

Because the legislature has provided that an award of civil damages is mandatory and copies of the order must be forwarded to the attorney general, it is apparent the legislature anticipated intervention by the attorney general. Therefore, we remand with directions to forward copies of the order so that the attorney general may intervene to seek a civil penalty.

## DECISION

We order vacated that portion of the judgment which awards damages for battery and punitive damages based thereon.

We hold that the trial court did not abuse its discretion in awarding punitive damages for sexual harassment.

We hold that the trial court erred in determining that Kinney had a qualified privilege to publish the defamatory statements about Wirig. Because the trial court had the forethought to instruct the jury to determine damages for defamation regardless of whether it found actual malice, there is no need for a new trial on this matter. The trial court is directed to order judgment for Wirig on the defamation award and damages, both compensatory and punitive, as set by the jury.

Affirmed in part, reversed in part, and remanded for entry of judgment and reconsideration of costs and civil damages in accordance with this opinion.