Margaret WIRIG, Appellant,

v.

KINNEY SHOE
CORPORATION, Respondent.

No. C5–89–653.

Supreme Court of Minnesota.

Oct. 19, 1990.

Lawrence R. Altman, North Oaks, Sam T. Courey, Courey, Schwinn & Kodadek, Minneapolis, for appellant.

Joseph J. Roby, Jr., Johnson, Killen, Thibodeau & Seiler, Duluth, for respondent.

Sonja R. Peterson, Horton & Assoc., Minneapolis, for amicus curiae MN Now & Les Soers.

Minn. Dept. of Human Rights, Earll M. Pott, Sp. Asst. Atty. Gen., St. Paul, amicus curiae.

Minn. Trial Lawyers Ass'n, David Singer, Karla R. Wahl, amicus curiae.

Women's Legal Defense Fund, Andrea F. Rubenstein, Douglas A. Hedin, Minneapolis, amicus curiae.

KEITH, Justice.

Margaret Wirig commenced this action seeking damages against her former employer Kinney Shoe Corporation (Kinney) for sexual harassment under the Minnesota Human Rights Act (MHRA), for common law battery arising from the same set of facts and for defamation of an employee by an employer. At the end of trial, the jury found in favor of Wirig on all three counts. The jury awarded the following damages: $30,000 compensatory, $7,100 future, and $5,000 punitive damages for sexual harassment; $14,000 compensatory and $100,000 punitive damages for battery; and $13,000 compensatory and $225,000 punitive damages for defamation. All awards were by special verdict, although the jury acted only in an advisory capacity on the sexual harassment claim.

The trial court accepted the advisory jury's findings and damage awards on the battery and sexual harassment claims, modifying only the award for punitive damages for sexual harassment by increasing it to the then statutory maximum of $6,000. It rejected any award for defamation, concluding as a matter of law that Kinney had a qualified privilege with respect to its defamatory statements, and that, absent a finding of malice, the privilege was not abused. It declined to assess a civil penalty.

Kinney's post trial motions for amended findings, JNOV, remittitur and a new trial were denied, and Wirig's pending motion for attorneys fees, costs and disbursements was in part granted. Kinney appealed the order denying it a new trial, while Wirig filed a notice of review of that part of the judgment denying her the defamation damages awarded her by special jury verdict.

The court of appeals, holding that pursuant to Minn.Stat. § 363.11 (1988), an action for sexual harassment brought under the Minnesota Human Rights Act bars a common law battery claim arising from the same acts, vacated the award of compensatory and punitive damages for battery. *Wirig v. Kinney Shoe Corp.*, 448 N.W.2d 526, 531, 536 (Minn.App.1989). It reinstated the damages awarded for defamation, holding as a matter of law that Kinney did not enjoy a qualified privilege for its accusation of theft against Wirig. *Id.* at 532–35. Finally, it remanded the case to the trial court for assessment of civil penalties to the state pursuant to Minn.Stat. §§ 363.-14, subd. 2, 363.071, subd. 2 (1988). *Id.* at 536.

Kinney petitioned for review on the issues of qualified privilege, affirmation of the defamation damage awards and the remand to the trial court for consideration of the imposition of a civil penalty. Wirig sought review of the determination that her battery claim was preempted by the Minnesota Human Rights Act. We affirm in part and reverse in part.

Kinney did not appeal the sexual harassment award or the facts underlying it that also support the battery award.

Wirig was employed by Kinney at its retail store in Southdale Shopping Center, Edina, Minnesota, as a part-time cashier from December 1984 until July 31, 1985, when she was fired. From April 1985 until her firing, Mark Thorson was also employed at this store as a nonsupervisory, nonmanagerial salesperson.

During the period they worked together Thorson made statements ·to and about

Wirig which included comments about her body, offensive sexual names, and discussions about what he would like to do to her sexually. On a number of occasions, without Wirig's consent, he kissed, pinched, patted or put his arm around her. Four Kinney managers and other co-workers observed this behavior. She complained on several occasions to several managers and asked them to stop Thorson from touching her. On only one occasion did a Kinney manager confront Thorson about this inappropriate touching and this attempt had no effect on his subsequent behavior. He was never disciplined for his statements or physical touching of Wirig. At the time, Kinney had no sexual harassment policy in effect and no effort had been made to train any of its managers to identify and deal with this problem.

Near the end of Wirig's employment at Kinney, an audit was conducted because store management changed. The audit showed losses of several thousand dollars in inventory. To find out why, the incoming manager met with the other managerial personnel shortly after the audit and discussed allegations of theft. Assistant managerial employees had heard accusations that several employees had stolen merchandise. The accusations came in particular from Thorson, who said he had witnessed theft, but also from a Kinney employee from another store who testified that someone told her about the theft and that it was "big gossip" among company employees. The incoming manager believed the assertions of theft and accepted the assistant managers' conclusions regarding the employees responsible, even though he had just started as manager and was not previously acquainted with either assistant manager and even though neither assistant manager would identify the witnesses to the thefts.

No investigation was conducted on the basis of the information. The assistant managers said they had solid proof because (1) Thorson was certain of it, (2) both assistant managers had heard of the theft, (3) the three accused socialized and hung around together, and (4) actual loss occurred as shown by the audit. In the context of possible prosecution for theft, however, the outgoing manager testified that Kinney did not have sufficient proof. Nevertheless, both the assistant manager and incoming manager testified that they honestly or absolutely believed Wirig had committed theft.

The incoming manager and both assistant managers decided Wirig and two other employees had committed the thefts and should be fired to assure there would be no more problems. The firings were to occur in front of all other employees involved at the Southdale store in order to set an example and show everyone that the new manager would not tolerate short audits. A meeting of all employees including management was called the next day. An assistant manager presented results of the audit and the conclusion that theft occurred. Employees were asked if anyone wanted to admit to it or comment upon it. No one did. It was clear that Wirig was accused of theft, albeit indirectly. At the end of the meeting, Wirig and the others were discharged, but made no protest regarding the charges.

Subsequent to the firing, Wirig requested a separation report. The report listed tardiness as the reason for discharge and made no mention of theft, because, according to the assistant manager who prepared the report, he wanted her to be able to get a job in the future, which she did without difficulty. According to testimony at trial, the managerial staff had no "ill will, spite or hard feelings" towards her.

 1. We first address the question of whether an employee can maintain against her employer both a statutory cause of action for sexual harassment under the Minnesota Human Rights Act (MHRA) and a common law cause of action for battery, when both claims arise from the same set of operative facts. We have long followed the presumption that statutory law is consistent with common law. *In re Shetsky*, 239 Minn. 463, 469, 60 N.W.2d 40, 45 (1953). If statutory enactment is to abrogate common law, the abrogation must be by express wording or nec-

essary implication. *Id.* Nothing in the exclusivity provision of the MHRA, Minn. Stat. § 363.11 (1988), expressly abrogates common law battery. In its entirety, section 363.11 states:

> The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this chapter shall be deemed to repeal any of the provisions of the civil rights law or of any other law of this state relating to discrimination because of race, creed, color, religion, sex, age, disability, marital status, status with regard to public assistance or national origin or familial status; but, as to acts declared unfair by sections 363.03 and 363.123, the procedure herein provided shall, while pending, be exclusive.

We note that it requires us to construe liberally MHRA provisions to effectuate the act's purposes. *See also Continental Can Co. v. State,* 297 N.W.2d 241, 248 (Minn.1980). From the outset, the overriding purpose of the MHRA has been to free society from the evil of discrimination that "threatens the rights and privileges of the inhabitants of this state and menaces the institutions and foundations of democracy."[1] Act of April 19, 1955, ch. 516, § 1, 1955 Minn. Laws 803. One of the MHRA's avowed public policies has been to "foster the employment of all individuals in this state in accordance with their fullest capacities." *Id.* To implement that policy with respect to women, the legislature has amended the MHRA to include sex as a protected class and sexual harassment as a form of sex discrimination. Act of June 6, 1969, ch. 975, § 3, 1969 Minn. Laws 1937–38 (adding sex as a protected class); Act of March 23, 1982, ch. 619, § 2, 1982 Minn. Laws 1511 (adding sexual harassment as a form of sex discrimination). The specific purpose of the amendment prohibiting sex discrimination is "to rid the workplace of disparate treatment of female employees merely because they are female." *Continental Can,* 297 N.W.2d at 248; Minn.Stat. § 645.17(4) (1988) (when court of last resort has construed language of a law, legislature in subsequent laws on same subject intends same construction). The short of it is that the prohibition of sexual harassment aims at abolishing the pernicious societal prejudices and biases against women that impede the equal opportunity due them in our democracy. For that reason, the essence of the MHRA is societal change. Redress of individual injuries caused by discrimination is a means of achieving that goal.

Elimination of employment discrimination and establishment of equal employment opportunities and conditions for both sexes is not effectuated by declaring common law battery preempted by an MHRA sexual harassment action. Battery does not address discrimination. It does not propose to redress injuries occasioned by society's discriminatory tendencies. It did not develop to change society's biases or prejudices. Although under certain circumstances sexually motivated battery might fit the definition of sexual harassment,[2] the purpose of the MHRA does not

---

**1.** The seminal version of the MHRA, known as the Minnesota State Act for Fair Employment Practice (FEP), set out its policies in full as follows:

> Section 1. Declaration of policy. As a guide to the interpretation and application of this act, be it enacted that the public policy of this state is to foster the employment of all individuals in this state in accordance with their fullest capacities, regardless of their race, color, creed, religion, or national origin, and to safeguard their rights to obtain and hold employment without discrimination. Such discrimination threatens the rights and privileges of the inhabitants of this state and menaces the institutions and foundations of democracy. It is also the public policy of this state to

protect employers, labor organizations and employment agencies from wholly unfounded charges of discrimination.

Act of April 19, 1955, ch. 516, § 1, 1955 Minn. Laws 802–03 (current version found at Minn. Stat. § 363.12 (1988)).

**2.** Section 363.01, subd. 10a defines sexual harassment, in relevant part, as including:

> unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature when:

> \* \* \* \* \* \*

> (3) that conduct or communication has the purpose or effect of substantially interfering with an individual's employment, \* \* \* or

suggest that sexually motivated battery should be impliedly abrogated as an act declared unfair by the statute. The legislature did not design the MHRA to redress intentional offensive physical contact already addressed by a tort battery action. Therefore, we hold that a sexual harassment action brought pursuant to the MHRA does not bar a parallel action for common law battery.

 2. Although we decide parallel actions can be maintained, we do not uphold double recovery for the same harm. *See Thill v. Modern Erecting Co.*, 284 Minn. 508, 513, 515, 170 N.W.2d 865, 869–70 (1969) (providing a safeguard to a wife's loss of consortium action, because of the "danger of double recovery"); *see also Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 531, 533, 537 (Minn.1986) (noting evidence supported all three theories of liability, but double recovery not allowed); *Huffer v. Kozitza*, 375 N.W.2d 480, 482 (Minn.1985) (jury to be instructed to limit award for wife's loss of consortium to only those damages sustained over and above those included in husband's award).

What we have here are two legal remedies for the same wrongful conduct. Much like a products liability case where plaintiff pursues both a warranty and a negligence action, here plaintiff may pursue either or both sexual harassment and battery, provided, however, there is no double recovery.

In this case Wirig, by obtaining attorney fees of $62,800 in the sexual harassment action, has elected to recover damages under the sexual harassment action. Consequently, she cannot recover further punitive damages for battery unless she can show, by clear and convincing proof, that the misconduct on which the $100,000 punitive damages award in the battery action was based is different in kind from the

misconduct for which the $6,000 punitive damages was awarded for sexual harassment.

The difference in the size of the two awards, by itself, tells us little; it may only reflect adroit trial tactics in persuading the jury to allocate the major portion of punitive damages to the battery so as to avoid the limitation on such damages in the sexual harassment claim.[3]

Wirig attempts to explain the difference in the size of the two awards by arguing that the $100,000 is for physical misconduct while the $6,000 is for verbal misconduct. We doubt if it is sound judicial administration to allow plaintiff to split her cause of action, particularly in such an arbitrary and artificial fashion. *Cf. Vineseck v. Great N. Ry.*, 136 Minn. 96, 100–01, 161 N.W. 494, 496 (1917). In any event, the trial judge, in making his findings on the sexual harassment claim, based the punitive damages award on defendant's overall misconduct.

We conclude, therefore, that Wirig is limited to her compensatory and punitive damages awarded in the sexual harassment action, which permits her also to recover her attorney fees from the defendant. Wirig cannot recover any damages on the battery count.

 3. The next issue presented on appeal is whether Kinney enjoyed a qualified privilege to publish the theft allegation against Wirig at a meeting of both managerial and nonmanagerial employees. The occasion here was a meeting of all employees, both managerial and nonmanagerial, called to reveal and discuss the results of an internal audit showing losses of over $4500 worth of merchandise and to confront employees with the conclusion that the loss was due to theft committed by certain employees. Its purpose was to protect Kinney from such future losses by making Kinney's position clear and by punishing

creating an intimidating, hostile, or offensive employment * * * environment; and in the case of employment, the employer knows or should know of the existence of the harassment and fails to take timely and appropriate action.
Minn.Stat. § 363.01, subd. 10a (1988).

3. The jury, in its advisory capacity, was asked, "What amount, not to exceed $6,000, should Margaret Wirig receive as punitive damages as a result of the sexual harassment?" In other words, the jury was told about the statutory cap. Interestingly, the jury awarded only $5,000; the trial judge then increased the amount to $6,000.

the perpetrators. The results of the audit and reasons for the loss were of concern to all employees, both managerial and non-managerial, because of their common interest in operating a successful enterprise. To operate successfully, Kinney needed to prevent theft. We hold, therefore, as a matter of law that Kinney had a proper purpose and arranged a proper occasion upon which to communicate its conclusions regarding suspected theft.

Qualified privilege rests, however, on more than having a proper occasion and purpose. The employer must also have reasonable or probable grounds for believing in the validity of the statement, even though hindsight might show the statement to be false. When finding that reasonable grounds existed, this court has examined the facts supporting the defamatory allegations. In *McBride v. Sears, Roebuck & Co.*, 306 Minn. 93, 235 N.W.2d 371 (1975), for example, an employee was fired for suspected dishonest conduct, but not before she had been investigated. When the employee was personally confronted by the store manager, she admitted taking home merchandise "on approval" without following proper procedures and without paying for it. *Id.* at 95, 235 N.W.2d at 373. We held that plaintiff's admission of taking home a large order of merchandise without paying and without preparing proper sales records, together with further evidence of preparation of at least one false return slip, irregularities in handling an order, and a possible inference from the irregularity that plaintiff falsified the books sufficiently established the existence of probable cause. *Id.* at 95, 97–98, 235 N.W.2d at 373–74. Similarly, in *Hebner v. Great N. Ry.*, 78 Minn. 289, 80 N.W. 1128 (1899), a defamation action brought by an employee fired for cause, this court held that probable cause existed when the plaintiff practically admitted the charges against him when he was personally investigated and warned to correct his conduct.

*Id.* at 293–94, 80 N.W. at 1129–30. Also, in *Otto v. Charles T. Miller Hosp.*, 262 Minn. 408, 115 N.W.2d 36 (1962), concerning an employee fired for suspected arson, this court held probable cause existed where facts showed that the employee had worked on the affected hospital floor on both occasions when fires started and an independent arson squad investigation, which included questioning the plaintiff and other hospital visitors and employees, implicated the plaintiff in setting the fires. *Id.* at 409–10, 413, 115 N.W.2d at 37, 39–40. In all cases where we have determined that probable cause existed, the evidence showed that investigative steps had been taken, including personal questioning of the affected employee, in an effort to ascertain the accuracy of statements made about the employee's conduct. In each case the results of the investigations provided sufficient evidence of probable cause.[4]

The facts here indicate that no investigation occurred to substantiate the charges that Wirig had stolen merchandise. The managerial personnel who repeated the accusations simply believed their sources without further investigation. One source, Thorson, was an eyewitness, but his credibility may be questionable because he is the employee who sexually harassed Wirig. The other source, the employee who worked in a different Kinney store, reported only hearsay and would not identify her source at that time. The incoming manager believed the assistant managers' conclusion without further inquiry, with only perfunctory personal acquaintance with the assistant managers and with no familiarity with the interplay of personnel at the store.

We believe that an employer who takes no steps to investigate but relies entirely on accusations either made by employees who may be biased or on second-hand hearsay with no identification of sources, has not acted as a reasonably pru-

4. Where evidence of reasonable or probable grounds for believing in the validity of the potentially defamatory statements is such that it permits of more than one conclusion regarding the existence of reasonable or probable cause, the question becomes one of fact for the jury. The court then factors that factual finding into its legal determination of whether an employer enjoys a qualified privilege for his statements.

dent person and lacks probable or reasonable grounds for making a potentially defamatory statement. Therefore, we hold as a matter of law that Kinney did not enjoy a qualified privilege.

In order to avoid the necessity of a new trial if qualified privilege were found not to exist, the trial judge included a damages section to the defamation part of the special verdict form. The jury awarded $10,000 for harm to reputation, $3,000 for emotional distress, and $225,000 in punitive damages. In light of our holding, we reinstate the jury award of compensatory damages.

 4. With respect to that punitive damages award, Minn.Stat. § 549.20, subd. 1 (1988) provides that punitive damages are permitted "only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others." Kinney argues that because the jury found no malice, using a preponderance of the evidence standard, there can be no willful indifference to Wirig's rights under the clear and convincing standard. First, the jury's finding of no malice responded to the question of whether Kinney had abused its qualified privilege, not to whether punitive damages should be assessed against the employer. Secondly, the standard for awarding punitive damages is not one of common law malice, but rather is one of "willful indifference." Willful indifference is not equivalent to common law malice in a defamation action. Common law malice in this context has been defined as making the statement "from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *McKenzie v. William J. Burns Int'l Detective Agency*, 149 Minn. 311, 312, 183 N.W. 516, 517 (1921). Willful indifference does not imply a purpose of actually intending to harm the plaintiff, but a knowing disregard of the plaintiff's rights or safety.

Here, the right affected was Wirig's right not to be defamed. Kinney managerial staff subjectively believed she had committed theft. The theft, as indicated by Kinney's internal audit showing a loss of

$4,500, was substantial. Management wanted to stop the theft, punish those they believed to be the wrongdoers and explain the situation to the remaining employees. Kinney acted quickly because the new manager was to begin immediately· and he wanted to make clear that such losses would not be tolerated. Consequently, management called the employee meeting, discussed the theft and fired Wirig and others without conducting an investigation. Kinney's failure to investigate constitutes gross negligence but not negligence rising to the level of willful indifference. *See Utecht v. Shopko Dep't. Store*, 324 N.W.2d 652, 654 (Minn.1982) (affirming trial court's denial of amendment of complaint to include punitive damages because evidence showed, at most, only negligence). Kinney subjectively believed in the truth of its accusation and therefore did not knowingly, wilfully and wantonly disregard Wirig's interest in not being defamed.

 An answer to a special verdict question will be set aside when it is palpably contrary to the evidence. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn.1984). As the evidence in this case does not establish indifference, we hold as a matter of law that the punitive damage award for defamation is contrary to the evidence and is therefore vacated.

 5. Finally, we address the court of appeals' sua sponte remand for reconsideration of an award of a civil penalty in the sexual harassment case. Neither party appealed the trial court's decision on that issue. Minn.Stat. § 363.14, subd. 2 (1988), referring to actions brought directly to district court, provides for the court to issue an order directing appropriate relief as provided by section 363.071, subd. 2 (1988). Section 363.071, subd. 2 provides in relevant part that the judge "shall order any respondent found to be in violation of any provision of section 363.03 to pay a civil penalty to the state." The statute leaves the amount to be assessed to the judge's discretion. Minn.Stat. § 363.071, subd. 2 (1988). Under the circumstances of this case, we do not find that the trial court abused its discretion. We therefore re-

verse the appellate court's remand for reconsideration of an assessment of a civil penalty.

Affirmed in part and reversed in part.

TOMLJANOVICH, J., took no part in the consideration of this case.

COYNE, Justice (concurring specially).

I concur in the result.