**Charles R. ROSENBLOOM, Respondent,**

v.

**Joel FLYGARE, et al., Appellants.**

No. C3–92–323.

Court of Appeals of Minnesota.

Aug. 4, 1992.

Review Granted Oct. 20, 1992.

Jeffrey W. Thone, Saliterman & Siefferman, Minneapolis, for respondent.

Michael O. Freeman, Hennepin County Atty., Karla F. Hancock, Sr. Asst. County Atty., Minneapolis, for appellants.

Considered and decided by HARTEN, P.J., RANDALL, and FOLEY,* JJ.

## OPINION

HARTEN, Judge.

Appellants Hennepin County Deputy Sheriff Joel Flygare and the County of Hennepin appeal an order denying their motions for a new trial of respondent Charles R. Rosenbloom's causes of action for racially-motivated battery by appellant Flygare. Appellants assert that respondent received a double recovery of damages for common law battery and violation of the Minnesota Human Rights Act, Minn. Stat. § 363.03, subd. 4(1) (1986). Appellants also challenge an award of punitive damages on the common law battery claim. Finally, appellants maintain that they should be granted a new trial.

## FACTS

On May 27, 1987, respondent went to the Hennepin County Adult Detention Center to visit his brother, Akbar Abdullah. Appellant Flygare was stationed at the social visitation window in the jail. After giving Flygare his brother's name, Respondent alleges that Flygare chanted the name in a racist fashion and smiled. Respondent took offense and told Flygare he considered his behavior racist. Respondent asked to speak to Flygare's supervisor. Respondent admits he commented that Flygare was an "asshole."

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

There was testimony that another deputy then asked Flygare if he was going to let respondent get away with calling him an "asshole." Flygare told respondent he could not remain in the jail and asked him to leave. Respondent again asked to see Flygare's supervisor. Flygare testified that he did not call his supervisor because he thought he could "handle" the situation.

When respondent refused to leave, Flygare threatened to arrest him. Respondent again requested to see Flygare's supervisor and told Flygare to go ahead and arrest him.

Janet E. Kraft, another visitor at the jail, testified that respondent did not exhibit any aggression. She testified that Flygare became very angry when respondent refused to leave and, when respondent told Flygare to go ahead and arrest him, Flygare and the other deputy came out in the public area to get respondent. Kraft testified that Flygare put respondent in a "choke hold." According to Kraft, respondent did not put up a struggle. Kraft said she could no longer see what was happening when the two deputies took Flygare into the nonpublic area.

Franklin Benjamin, a prisoner in the jail, testified that he saw what happened when respondent was brought into the nonpublic area. Benjamin testified that Flygare had respondent's arm pulled up behind him and was generally manhandling him. According to Benjamin, Flygare called respondent racist names and threw him to the ground more than once.

These events occurred at approximately 1:00 p.m. Respondent was jailed, charged with disorderly conduct and then released at 11:00 p.m. A jury acquitted respondent of disorderly conduct.

After respondent filed a charge with the Minnesota Department of Human Rights, the commissioner found probable cause. On May 6, 1988, respondent served a summons and complaint upon appellants Flygare and Hennepin County. Following a decision in a Hennepin County District Court arbitration hearing, appellants filed a request for a trial.

Beginning on July 29, 1991, a jury trial was held in Hennepin County District Court. By special verdict, the jury found that appellant Flygare committed a battery on respondent and the battery was a direct cause of injury to respondent. The jury was asked to measure damages for the battery only. The jury found damages of $3,700 for medical expenses, $30,000 for embarrassment and emotional distress, and $15,000 for pain, disability and disfigurement. The jury also found that appellant Flygare's acts showed a willful indifference to the rights or safety of respondent and assessed $65,000 punitive damages. Finally, the jury found that appellant Flygare discriminated against respondent in the area of public service on the basis of race, and the discrimination was a direct cause of respondent's injury.

On August 9, 1991, the trial court filed findings of fact, conclusions of law and order for judgment. The trial court adopted the jury's findings and found that appellant Flygare discriminated against respondent in violation of Minn.Stat. § 363.-03, subd. 4(1). The trial court awarded respondent $2,000 for embarrassment and emotional distress damages and $6,000 for punitive damages under the Human Rights Act.

The trial court subsequently filed an order that denied appellant's motions for JNOV, a new trial and remittitur and granted respondent's motion for $24,000 attorney fees. This appeal is from that order.

## ISSUES

1. Did respondent receive double recovery on the damages awarded for common law battery and violation of Minn.Stat. § 363.03, subd. 4(1)?

2. Did the trial court err in awarding punitive damages on respondent's cause of action for common law battery?

3. Did the trial court err in denying appellants' motion for a new trial?

## ANALYSIS

1. A party can maintain parallel actions for race discrimination and common

law battery. *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 377–78 (Minn.1990). However, the party cannot recover twice for the same wrongful conduct. *Id.* at 379. The trial court allowed respondent to present his case to the jury in a bifurcated fashion. That is, respondent attempted to segregate the damages for common law battery from the damages for race discrimination. He was not entirely successful, however.

■ In an action for common law battery, a plaintiff ordinarily would not be awarded attorney fees. *See Uselman v. Uselman*, 464 N.W.2d 130, 140 (Minn.1990) (under "American rule" prevailing party is not entitled to attorney fees just because he won). The Human Rights Act allows recovery for attorney fees. *See* Minn.Stat. § 363.071, subd. 2 (1986). On the other hand, the Human Rights Act limits punitive damages to $6,000. *Id.* There is no statutory limit on punitive damages for a common law battery action. Therefore, by bifurcating his action, respondent was able to get the best of both worlds. He received punitive damages in excess of those allowed under the Human Rights Act, and he received attorney fees ordinarily not recoverable in a common law action.

Respondent relies on *City of Minneapolis v. Richardson*, 307 Minn. 80, 239 N.W.2d 197 (Minn.1976). A close reading of *Richardson*, however, does not support respondent's position. The supreme court said:

> We cannot regard use of the term "nigger" in reference to a black youth as anything but discrimination against that youth based on his race.

*Id.* at 88, 239 N.W.2d at 203. Nonetheless, the court went on to say:

> We hold that use of this term by police officers *coupled with all of the other uncontradicted [assaultive] acts described herein* constituted discrimination because of race.

*Id.* at 89, 239 N.W.2d at 203. (emphasis added).

■ A cause of action for discrimination might be brought solely because a person was subjected to racial epithets. Where, as here, the epithets are coupled with physical contact, however, the epithets serve to show the racial animus motivating the physical contact. It is not possible to separate the racial discrimination from the battery, and recovery for both constitutes double recovery. *Wirig*, 461 N.W.2d at 379. We hold that respondent's claims arise from one course of conduct cognizable under the Human Rights Act.

■ The more difficult question is how the damages should be apportioned. In *Wirig*, the court found that the plaintiff should be confined to her damages under the Human Rights Act because she had elected to take attorney fees. *Id.* Application of that approach here requires adjustment of damages.

The trial court ruled that *Wirig* did not prevent respondent from bifurcating the damages for the common law battery and the human rights violations. Apart from attorney fees, the damages awarded for the common law battery are greater than those awarded under the Human Rights Act. We hold that respondent cannot receive damages for his common law battery action as such; however, the trial court may award respondent common law battery damages compensable under the Human Rights Act. *See* Minn.R.Civ.P. 39.02 (trial court has authority to impanel advisory jury). We remand to the trial court for recalculation of the damage awards under the Human Rights Act pursuant to its authority under Minn.Stat. § 363.14, subd. 2 (1990).

2. Because we have determined that respondent cannot recover damages for common law battery, we do not reach the question of whether the trial court erred in granting respondent's motion to amend his complaint to add a claim for punitive damages on that cause of action. Nor need we decide if the award is excessive.

3. Appellants argue that the trial court erred in denying their motion for a new trial. Our review of the trial transcript convinces us that appellants' arguments are unpersuasive as to the weight of the evidence. Additionally, the errors of law

asserted by appellants were of an insignificant and passing nature.

## DECISION

Because respondent received a double recovery on his common law battery and race discrimination claims, we remand for recalculation of damages under the Minnesota Human Rights Act. We affirm the trial court's denial of appellants' motions for JNOV, a new trial and remittitur.

Affirmed as modified and remanded.