**William J. "Bucky" WOY, Plaintiff,**

v.

**Ted TURNER, Defendant.**

**Civ. A. No. C80–1595A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 17, 1981.

---

Windle Turley, Dallas, Tex., Harry L. Cashin, Jr., Atlanta, Ga., for plaintiff.

Dennis J. Webb, John J. Dalton, Atlanta, Ga., John H. Marks, Dallas, Tex., for defendant.

ORDER OF COURT

HORACE T. WARD, District Judge.

This case is before the court on defendant's motion for partial summary judgment in this action for damages due to allegedly defamatory comments made on a telecast and tortious interference with a contract.[1] Defendant seeks a judgment holding that plaintiff was a "public figure" at the time of the incident complained of and that, as a result, he must prove actual malice to prevail on the issue of defamation.[2]

At the outset this court must decide whether the standard set forth in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), applies to an individual non-media defendant. The United States Supreme Court has not decided this question. *See, Hutchinson v. Proxmire*, 443 U.S. 111, 133 n.16, 99 S.Ct. 2675, 2687 n.16, 61 L.Ed.2d 411 (1979). In *Chuy v. Philadelphia Eagles Football Club*, 431 F.Supp. 254 (1977), a case in which defendants were sued for defamatory statements made by the team doctor to a newspaper regarding plaintiff's physical condition, the district court discussed the question without ruling on it. " . . . the very purpose of the media is to inform private persons (the public) and facilitate effective discussion and consideration of the events of the day. In terms of the First Amendment policies underlying *Times* and the hallowed role of private dialogue in our society, it seems inappropriate to us to distinguish media from non-media speech and to elevate the media's role in aiding the public in its discussion above private discussions occurring in everyday life." 431 F.Supp. at 266 n.20. The Third Circuit reversed the decision of

---

1. After Bob Horner's first season with the Atlanta Braves National League Baseball Club, plaintiff acted as his agent in negotiations for a new contract with Bill Lucas, the representative of the Braves. Prior to the resolution of the dispute, Mr. Lucas died. Subsequently, Ted Turner, owner of the Braves, made statements on a telecast to the effect that plaintiff's tactics and accusations in the course of negotiations had contributed to or caused Mr. Lucas' death.

2. The standard of *The New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) defines the level of constitutional protection appropriate to the context of defamation of a public person. Specifically, defendant seeks a holding that as a public figure, plaintiff can prevail only by showing that defendant "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

the lower court, but avoided determining whether or not the *Times* rule applied by stating that Chuy failed to prove defamation by even a less stringent standard. 592 F.2d at 1281. The Third Circuit in *Avins v. White*, 627 F.2d 637 (3rd Cir. 1980), approvingly quoted the Circuit Court of Appeals for the District of Columbia in *Davis v. Schuchat*, 510 F.2d 731 (D.C.Cir.1975). In *Davis*, the Court stated in a footnote: " . . . Our understanding of New York Times and its offspring is that private persons and the press are equally protected by the requirement that false comment about public figures must be knowing or in reckless disregard of the truth in order to be actionable. . . . " 510 F.2d at 734. In the case at bar, the issue of a narrow audience or "private" speech is not presented as a factor to militate against application of the standard to a non-media defendant. The alleged defamatory comments were made on a telecast.

■ In sum, under the facts presented in this case, the court holds that the non-media individual defendant could be accorded the rights provided in *New York Times*. Whether the standard is in fact applicable depends on whether the plaintiff is a public figure. This is the matter discussed in the summary judgment motion.

The defendant first contends that plaintiff is a public figure for purposes of his activities as a sports agent based on his general fame or notoriety in that capacity. There is evidence in support of this contention to the effect that the nature and extent of publications and speeches lead to an inference that plaintiff was not as vulnerable to injury as a private person because he could induce the media to publish his responses to any defamation. *See Curtis Publishing Co. v. Butts*, 388 U.S. 130, 151, 87 S.Ct. 1975, 1989, 18 L.Ed.2d 1094 (1967). However, plaintiff characterizes the facts on the nature and extent of publicity in a different manner and also cites a deposition of a sports journalist who had not heard of plaintiff until the time of the dispute leading to the incident complained of.

The defendant also appears to contend that plaintiff is a public figure because he "voluntarily injected himself into a public controversy in order to influence the outcome of issues." *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974). Plaintiff does not seem to disagree that there was a public controversy. In any case, it is clear that a controversy existed, and it cannot be disputed that publicity including plaintiff was widespread. The plaintiff does dispute defendant's characterization of facts surrounding the nature and extent of plaintiff's participation in the public controversy. This goes to the "voluntariness" issue, the issue most important and difficult in this motion.

In order to support his argument on "voluntariness," the defendant relies on several cases finding that a defendant was a public figure. *See, e.g., Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (football coach charged by national magazine with fixing a game held to be a public figure); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3rd Cir. 1979) (professional football player held to be public figure as to his playing career); *Rosanova v. Playboy Enterprises, Inc.*, 411 F.Supp. 440, aff'd 580 F.2d 859 (5th Cir. 1978) (individual with reputed association with organized crime was public figure despite not having sought such status); *Vandenberg v. Newsweek, Inc.*, 507 F.2d 1024 (5th Cir. 1975) (college track coach is public figure for some issues). The plaintiff argues that he is a private person who received media attention due to his professional service to a client associated with a public controversy. *See, Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (attorney who was a prominent member of the bar and a public activist and who accepted employment in a case predictably receiving media attention held not to be a public figure). *See also, Wolston v. Reader's Digest Association, Inc.*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979) (admitted Russian spies' nephew who was cited for contempt for failure to appear before the 1957–58 grand

jury investigations knowing that media attention would result held not to be public figure); *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1975) (wife of wealthy businessman who was prominent society member receiving media attention and who held press conferences on her widely publicized divorce trial held not to be a public figure).

█ Plaintiff and defendant have different versions of the incidents surrounding the media coverage of the contract dispute involving the Atlanta Braves and plaintiff as representative of Mr. Horner. In sum, facts regarding the voluntary nature and extent of plaintiff's participation are in dispute. Furthermore, detailed and fact-sensitive determinations of public figure status appear to be the rule in cases cited by the parties. Accordingly, defendant's motion for partial summary judgment is DENIED WITHOUT PREJUDICE.