Ambrose CULLITON, et al., Appellants,

v.

Gregory MIZE, et al., Respondents.

No. C7–86–1367.

Court of Appeals of Minnesota.

April 14, 1987.

Joseph J. Roby, Jr., Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for appellants.

Timothy O. Lee, Duluth, for respondents.

Heard, considered and decided by SEDGWICK, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

Four Wrenshall town officials brought a defamation action against two non-media defendants for statements on matters of public concern distributed at a public hearing. The officials stipulated they could not prove the statements were made with actual malice. In a carefully reasoned memorandum, the trial court applied the *New York Times v. Sullivan* standard of actual malice and entered summary judgment against the officials. We affirm.

## FACTS

The town of Wrenshall has a history of spirited political debate on the conduct of its government officials. In November 1983 respondents Gregory Mize, Anthony Sheda and others submitted to the Carlton County attorney a list of grievances which included allegations of criminal misconduct against the four appellants, Ambrose Culliton and Robert Kent, members of the Wrenshall township board of supervisors; Susan Pedersen, the town clerk; and Phyllis Sheetz, the town treasurer.

After an investigation into these charges, the Carlton County attorney replied in a March 6, 1984, letter to respondents that there was no basis for criminal charges against these officials. The letter said that no further action would be taken by the county attorney's office, but respondents could convene a grand jury on the matter at their own expense.

At the March 13, 1984, town meeting Mize and Sheda distributed a multi-page handout to approximately 30 people in attendance. The handout again listed their grievances against the city officials and proposed solutions to remedy the problems. One of the proposals urged the citizens of Wrenshall to

> [d]emand a county attorney's criminal investigation into the alleged malfeasance (*criminal misconduct* of a public officer) by the 1982 and 1983 Wrenshall Town Board of Supervisors, Clerk and Treasurer. Note: This investigation has

been sought (November, 1983) and is in process at this time.

On November 5, 1984, Ambrose Culliton and the three other Wrenshall town officials named in the list of grievances sued for libel, claiming the statement was false and defamatory because the criminal investigation was not in progress but had been concluded by March 6, 1984, when the county attorney stated there was insufficient evidence to support the charges. Mize and Sheda answered, admitted publishing and circulating the handout at the town meeting, but denied it was libelous. They unsuccessfully moved for summary judgment.

At trial Mize and Sheda renewed their motion for summary judgment. The parties stipulated that Culliton and the others were bringing suit as "public officials" and that Mize and Sheda were private citizens with no connection to the media. Culliton and the other officials also stipulated they were not prepared to prove "actual malice" as defined by *New York Times v. Sullivan.*

The court granted summary judgment to Mize and Sheda, concluding that appellants, as public officials, must prove actual malice. Culliton and the other officials appeal, arguing the trial court applied the wrong standard of proof.

## ISSUE

Must a public official prove actual malice in a defamation action against a private, non-media defendant for statements which relate to a matter of public concern?

## ANALYSIS

Before 1964, libel in the United States was exclusively governed by local common law. A plaintiff had only to prove a defamatory statement was communicated to another person, that it was false, and that it tended to harm the plaintiff's reputation and lower him in the estimation of the community. *Restatement (Second) of Torts,* §§ 558–59 (1977); W. Prosser, *Handbook of the Law of Torts,* § 111, at 739 (4th ed. 1971).

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court first analyzed defamation law in relation to the constitutional right of free speech. The court held a public official could only recover damages arising from a defamatory falsehood made in relation to his official conduct if the official could prove the statement was made with "actual malice" —that is, with knowledge that it was false or with reckless disregard of whether it was false or not. *New York Times*, 376 U.S. at 279–80, 84 S.Ct. at 726.

The *New York Times* standard was subsequently applied to cases involving "public figures" who were not government officials when the statements related to issues of public concern, *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), and in *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), the Supreme Court extended the *New York Times* rule to all "communication involving matters of public or general concern without regard to whether the persons involved are famous or anonymous." *Id.* at 44, 91 S.Ct. at 1820.[1]

*Rosenbloom*, a plurality opinion, marked the farthest extension of the free speech protections under the first amendment as they relate to defamation law. However, the dissenting justices in *Rosenbloom* expressed concern that the holding would unfairly abridge the rights of private individuals to protect their reputations. The tension between those competing interests came fully to light in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

*Gertz* involved a private individual suing a media defendant for defamation on an issue of public concern. Recognizing that a private individual must have the right to protect his reputation against false and defamatory comments by the media, the court held a private plaintiff need not prove "actual malice" under *New York Times* in order to recover actual damages. *Gertz* left the states free to establish their own standards of liability for a publisher or broadcaster of a defamatory falsehood injurious to a private individual so long as the standard did not impose liability without fault. However, presumed or punitive damages required a showing of "actual malice." *Gertz* at 349, 94 S.Ct. at 3011.

*Rosenbloom* and *Gertz* formed part of a series in which the court attempted to define the reach of the *New York Times* rationale to libel actions brought by *private* figures. *See Jadwin v. Minneapolis Star & Tribune*, 367 N.W.2d 476, 483–85 (Minn.1985). Although these cases generally developed the law of defamation, they did not specifically apply these developing distinctions to defamation of a public official on an issue of public concern by a non-media defendant. *See Hutchinson v. Proxmire*, 443 U.S. 111, 133 n. 16, 99 S.Ct. 2675, 2687 n. 16, 61 L.Ed.2d 411 (1979). This is the issue on which the trial court in the present case was required to rule: the plaintiffs are public officials, the defendants are non-media, and the issue relates to a matter of public concern.

The Wrenshall officials maintain that they should not be required to prove "actual malice" because Mize and Sheda are non-media defendants. They rely on language contained in *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252 (Minn.1980):

> We agree that the *New York Times* "actual malice" standard was fashioned as an exception to the common law rule to permit the printed and electronic media to perform their function of informing the public about newsworthy people and events without undue fear of defamation liability. Thus, its focus on the defendant's *attitude toward the truth* of what

1. The Supreme Court further refined the scope of the *New York Times* rule in a number of succeeding cases. *See Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966) (extended scope of "public official" to supervisor of county ski area); *Pickering v. Board of Education of Township High School District 205,* *Will County, Illinois*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (holding that criticism of school system funding practices is an issue of public concern); *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) (clarifying the definition of reckless disregard).

he has said rather than on his *attitude toward the plaintiff* is proper only when a media defendant is involved. *Id.* at 257 (emphasis in original). The officials read this language as confining the *New York Times* "actual malice" standard to the media.

Although the quote appears to support their argument, *Stuempges* is significantly distinguishable from the present case. *Stuempges* involved a purely private action between an employee and his former employer over defamatory comments made in an employment recommendation. Taken in its proper context, the *Stuempges* language analyzes non-media defendants in relation to private-figure plaintiffs on issues which are not of public concern. *Dun & Bradstreet, Inc. v. Greenmoss Builders,* 472 U.S. 749, 752, 105 S.Ct. 2939, 2942 n. 1, 86 L.Ed.2d 593 (1985). We decline to accept the officials' argument that *Stuempges* requires us to ignore the *New York Times* rule in all cases of non-media defendants.

When court first recognized the constitutional privilege in *New York Times,* it did not limit its application to the media, but stated it applied to "critics of official conduct." *New York Times,* 376 U.S. at 256, 264, 268, 273, 279, 283, 292, 84 S.Ct. at 713, 717, 719, 722, 725, 727, 732. The Supreme Court has applied *New York Times* to non-media defendants in the past,[2] and courts have usually assumed that the privilege which has been extended to the media extends to non-media defendants as well as media defendants if the matter communicated relates to an issue of public concern. W. Prosser, P. Keeton, D. Dobbs, *The Law of Torts,* at 807 (5th Ed.1985); *Woy v. Turner,* 533 F.Supp. 102 (N.D.Ga.1981); *Davis v. Schuchat,* 510 F.2d 731 (D.C.Cir. 1975).

The Supreme Court recently had the opportunity to determine whether the *New York Times* rule should be confined to media defendants in *Dun & Bradstreet.* This case involved a private plaintiff, a non-media defendant, and a matter which was not of public concern. The Vermont Supreme Court held that the media protections outlined in *Gertz*—that presumed and punitive damages must be proved by the *New York Times* actual malice standard— do not apply to non-media defamation actions. The court upheld the Vermont court, although on different grounds. The court shifted its focus to the type of speech involved and held that the constitutional standard of actual malice was not available to a private figure suing a non-media defendant on a matter which was not of public concern. *Dun & Bradstreet,* 472 U.S. at 756, 105 S.Ct. at 2944–45.

Although *Dun & Bradstreet* did not decide the issue raised by the present case, it is significant that six members of the court, two in concurring and four in dissenting opinions, agreed that in defamation law, no distinction should be drawn between media and non-media defendants— that the first amendment gives no more protection to the press in defamation suits than it does to others exercising their freedom of speech. *Dun & Bradstreet,* 472 U.S. at 784, 105 S.Ct. at 2953, 2959; *see also Garcia v. Board of Education of Socorro Consol. School District,* 777 F.2d 1403, 1408–1411 (10th Cir.1985).

We hold that the constitutional protections of *New York Times* are not contingent upon whether the defendant is a "media defendant." If the alleged defamation relates to public officials on an issue of public concern, the *New York Times* protections attach no matter what the defendant's status. *See Dun & Bradstreet,* 472 U.S. at 771–76, 780–85, 105 S.Ct. at 2952–54, 2957–59; *see also Restatement (Second) of Torts* §§ 580A & B (1977).

Minnesota law is consistent with this position. In *Beatty v. Ellings,* 285 Minn. 293,

---

**2.** In *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), and *Henry v. Collins,* 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965), the court extended first amendment protections to non-media defendants who issued defamatory press releases. In *St. Amant v.*

*Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), the court gave first amendment protection to a political candidate who made a defamatory speech over television. *See also Dun & Bradstreet,* 472 U.S. at 749 n. 4, 105 S.Ct. at 2953 n. 4.

173 N.W.2d 12 (1969), a public-figure plaintiff sued numerous non-media defendants for statements relating to public issues. The court held that since the plaintiff was a public figure, he could recover only by showing the statements were made with actual malice. Again, in *Hirman v. Rogers,* 257 N.W.2d 563 (Minn.1977), three public officials brought a defamation action against a non-media defendant as a result of statements relating to a public issue. The court said the case fell squarely within the holding of *New York Times* and required the plaintiffs to prove actual malice. *Id.* at 566.

Finally, in *Jadwin* the Minnesota Supreme Court recognized the scope of the *New York Times* standard, describing it as "the privilege for citizen-critic of the government" necessary to the "maintenance of the opportunity for free political discussion to the end that government may be responsible to the will of the people." *Jadwin,* 367 N.W.2d at 482 (citing *New York Times,* 376 U.S. at 269, 282, 84 S.Ct. at 720, 727).

## DECISION

Affirmed.