Jane STRAUSS, Appellant,

v.

Irving THORNE, M.D., et al., Respondents.

No. C5-92-453.

Court of Appeals of Minnesota.

Sept. 29, 1992.

Review Denied Dec. 15, 1992.

Lawrence H. Crosby, Clem & Crosby, Minneapolis, for appellant.

Richard L. Pemberton, Jr., Meagher & Geer, Minneapolis, for respondents.

Considered and decided by HUSPENI, P.J., and CRIPPEN and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant Jane Strauss challenges the trial court's grant of summary judgment to respondents Dr. Irving Thorne, M.D., and Aspen Medical Group on her claims of defamation, negligent infliction of emotional distress and intentional infliction of emotional distress.

## FACTS

On January 20, 1989, Irving Thorne performed a vasectomy on Strauss' husband, Donald Blyly. Later that day, Strauss telephoned Thorne concerning certain complications Blyly was experiencing and complained that she had not been asked specifically to consent to the operation. On January 24, 1989, Strauss again called Thorne. Strauss alleges that, during this apparently heated conversation, Thorne called her a liar and hung up on her. Thorne alleges that Strauss used abusive and profane language and called him a butcher. Thorne also alleges that during the course of the conversation, he heard children crying in the background and Strauss sharply reprimanding her children in what he believed to be degrading and abusive language. Neither Strauss nor Thorne denies the other's allegations.

Sometime after this conversation, Thorne contacted Dr. Virginia Dragsten, M.D., to communicate his concern regarding possible child abuse by Strauss toward her children. Dragsten informed Thorne that others had expressed similar concerns. Thorne made the following addendum dated January 31, 1989, to Blyly's medical chart:

> I discussed Mr. Blyly and his wife, Jane Strauss, with Dr. Dragsten who is the pediatrician for their children. I voiced concern about the question of abuse of the children with a mother who has acted so irrationally toward me. Dr. Dragsten told me she would be in touch with the Child Care Workers regarding this.

At some point thereafter, Dragsten called the Child Protection Agency and related the incident without naming the family. She was informed that the concerns voiced by Thorne were not reportable. Thorne entered the following addendum dated May 2, 1989, on Blyly's medical chart:

> According to Dr. Dragsten, she has seen no evidence of abuse during her care of the Blyly–Strauss children. Dr. Dragsten did contact Child Protection and, without giving the family name, inquired if my concern was reportable. She was informed it was not. To my knowledge, no investigations or charges of child abuse have ever been made.

At some point following the telephone conversations between Strauss and Thorne, the Strauss–Blyly family was banned from receiving medical care from Aspen Medical Group due, in part, to a complaint filed by Thorne against Strauss. Thereafter, Strauss canceled the family's medical insurance and applied for comprehensive health insurance with State Farm Insurance Company. During State Farm's evaluation of the family's request for coverage, Strauss learned of the notations made by Thorne on Blyly's chart. The letter from State Farm informing Strauss and Blyly that their application had been denied stated in part:

> During the past several weeks, this office has received a number of pieces of correspondence relating to the concern expressed by Dr. Irving Thorne about abuse of the children. * * * It is noted

Dr. Thorne declined to remove or strike the documentation in question from the record. It is also noted other individuals from whom we have received letters, including Dr. Dragsten, have not seen evidence of child abuse. After reviewing all the information presented regarding this issue, we have concluded we do not have an adequate, reliable basis to evaluate and classify the risk presented.

The original decision to decline the application for Health Insurance was based on all the medical information provided by Aspen Clinic, including Dr. Thorne's entry regarding concern of child abuse.

Strauss alleges that Blyly spoke with Thorne and asked him to remove the notations. Blyly states in his affidavit:

I called Dr. Thorne to inform him [that] his child abuse accusation was false and to demand that he remove the accusation from the chart. During this telephone conversation, Dr. Thorne indicated that he didn't care if there was any child abuse—that he had done the charting to get back at my wife for talking to him in a manner that he found offensive. He claimed that he had "worded it very carefully" so that he was not actually accusing Jane of child abuse, but merely raising the possibility. He took the position that because of his careful wording of the entry, there was nothing we could do to make him change it. Dr. Thorne also threatened to come up with additional accusations regarding Jane if we try to take him to court over his child abuse accusation.

Aff. of Don Blyly, ¶ 4. For purposes of the summary judgment motion, Thorne has not specifically denied these allegations. Strauss alleges that as a result of Thorne's statements on Blyly's chart and the family's resulting inability to get insurance, she has become extremely anxious and has needed to begin therapy.

## ISSUE

Did the trial court err in granting summary judgment to respondents on appellant's claims of defamation, negligent infliction of emotional distress and intentional infliction of emotional distress?

## ANALYSIS

On appeal from a summary judgment, we must determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). In reviewing the trial court's decision, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954). If reasonable persons might draw different conclusions from the evidence presented, summary judgment should be denied. *Illinois Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630, 634 (Minn.1978). Even if it appears unlikely that the non-moving party will prevail at trial, summary judgment must be denied on issues which are not shown to be "sham, frivolous, or so insubstantial that it would obviously be futile to try them." *Hamilton v. Independent Sch. Dist. No. 114*, 355 N.W.2d 182, 184 (Minn.App.1984) (quoting *Whisler v. Findeisen*, 280 Minn. 454, 456, 160 N.W.2d 153, 155 (1968)).

### I.

Strauss asserts that the trial court erred in granting summary judgment for respondents on her claim of defamation. Under Minnesota common law, a statement is defamatory if it is communicated to someone other than the plaintiff, it is false, and it tends to harm the plaintiff's reputation and to lower the plaintiff's estimation in the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980); *Lee v. Metropolitan Airport Comm'n*, 428 N.W.2d 815, 819 (Minn.App. 1988). An otherwise defamatory statement may not be actionable if it is privileged. *Lee*, 428 N.W.2d at 819. For a qualified privilege to arise, the statement

must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith, the law does not imply malice from the communication itself, as in the ordinary case of

libel. Actual malice must be proved, before there can be a recovery, and in the absence of such proof the plaintiff cannot recover.

*Stuempges,* 297 N.W.2d at 256–57 (quoting *Hebner v. Great Northern Ry. Co.,* 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899)). The trial court correctly concluded that, as a matter of law, Thorne's notations were subject to a qualified privilege.

However, this qualified privilege may be overcome if Strauss proves that it was abused. *Phipps v. Clark Oil & Refining Corp.,* 408 N.W.2d 569, 574 (Minn. 1987); *Karnes v. Milo Beauty & Barber Supply,* 441 N.W.2d 565, 568 (Minn.App. 1989), *pet. for rev. denied* (Minn. Aug. 15, 1989). To prove abuse, Strauss must show actual malice, which is defined in Minnesota as actual ill will, or intent to causelessly and wantonly injure. *Frankson v. Design Space Int'l,* 394 N.W.2d 140, 144 (Minn. 1986).[1] Malice may be proven by evidence of personal ill feeling, exaggerated language or the extent of publication. *Id.* (citing *Friedell v. Blakely Printing Co.,* 163 Minn. 226, 231, 203 N.W. 974, 976 (1925)).

The trial court noted that Strauss had introduced as evidence of malice Blyly's statement that Thorne indicated that he had done the charting to get back at Strauss. The trial court concluded that this evidence was insufficient to show actual malice by Thorne.

However, a careful review of the record reveals that Strauss has put forth "substantial evidence" to show a genuine issue as to Thorne's malice. *See Murphy v. Country House, Inc.,* 307 Minn. 344, 351–52, 240 N.W.2d 507, 512 (1976) (genuine issue must be established by "substantial evidence" or evidence sufficient to avoid a directed verdict at trial); *see also Lamb v. Jordan,* 333 N.W.2d 852, 855 (Minn.1983) (JNOV granted if "reasonable minds cannot differ" as to the outcome). Strauss has offered as evidence of malice: the heated telephone conversation between Strauss and Thorne; Blyly's statements in his affidavit that Thorne made the notations to get back at Strauss;[2] and Thorne's refusal to remove the notations from Blyly's chart after he learned that his concerns were not reportable and after the family requested removal so that they would not be denied insurance.[3] Strauss has shown sufficient evidence of "personal ill feeling" to prevent summary judgment on the issue of malice.[4] Consequently, the trial court erred in granting summary judgment on Strauss' defamation claim.

II.

Strauss also asserts that if she is able to prevail on her defamation claim, she is entitled to seek recovery for negligent infliction of emotional distress. Generally, a person may recover for negligent infliction of emotional distress when that person is within a zone of danger of physi-

1. The partial dissent argues that Strauss' case must fail for lack of presumed damages because she has failed to show "actual malice" in the federal constitutional sense, that is, that Dr. Thorne acted with knowledge of his entry's falsity or reckless disregard of its truth or falsity. However, Blyly's claim that Thorne "indicated" to him that "he didn't care if there was any child abuse" is sufficient to show at least reckless disregard of the truth.

2. The partial dissent suggests that because Blyly used the word "indicated" to refer to Thorne's statements to him, Blyly only makes an inadmissible lay opinion of what he was told. However, an examination of the context of the word suggests that Blyly was not giving an overall impression of what he heard but was rather simply paraphrasing Thorne's words. *Compare United States v. Phillips,* 600 F.2d 535, 539 (10th Cir.1979) ("indicate" used to give overall impression of conversation rather than paraphrase).

In any case, the trial court apparently considered Blyly's statement as if it were a paraphrase, and an evidentiary question such as this is better left to the discretion of the trial court.

3. Strauss also argues that Thorne's failure to report independently his concerns to the appropriate agency is evidence of malice. However, the reporting statute specifically states that it does not "require more than one report from any institution, facility, school, or agency." Minn.Stat. § 626.556, subd. 3(a) (1990). Dr. Dragsten's telephone call inquiring whether Thorne's concern was reportable was sufficient under the statute.

4. The exaggerated language that Strauss acted "irrationally" and the fact that Thorne could have anticipated publication to insurance companies, as well as other health professionals, may also support a finding of malice.

cal impact, reasonably fears for his or her own safety, and consequently suffers severe emotional distress with resultant physical injury. *Leaon v. Washington County*, 397 N.W.2d 867, 875 (Minn.1986); *Bohdan v. Alltool Mfg. Co.*, 411 N.W.2d 902, 907 (Minn.App.1987), *pet. for rev. denied* (Minn. Nov. 13, 1987). An exception to this rule is that a person may also recover damages for mental anguish or suffering for a direct invasion of rights, such as defamation, malicious prosecution or other willful, wanton or malicious conduct. *Bohdan*, 411 N.W.2d at 907.

The trial court noted that Strauss was not within a "zone of danger" and did not display physical symptoms resulting from being within a zone of danger. The trial court concluded that Strauss also would not fall within the exception to the "zone of danger" rule because she could not prevail on her defamation claim. However, because we find that summary judgment should be denied on Strauss' defamation claim because she has raised an issue of fact, we find that she is entitled to have her claim of negligent infliction of emotional distress considered on remand as well.

### III.

■ Finally, Strauss asserts that the trial court erred in granting summary judgment to respondents on her claim of intentional infliction of emotional distress. In order to sustain a claim for intentional infliction of emotional distress, Strauss must show: (1) there was extreme and outrageous conduct, (2) the conduct was intentional or reckless, (3) it caused emotional distress, and (4) the distress was severe. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn.1983). The conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Haagenson v. National Farmers Union Property & Casualty Co.*, 277 N.W.2d 648, 652 n. 3 (Minn.1979). The distress must be so severe that no reasonable person can be expected to endure it. *Hubbard*, 330 N.W.2d at 439 (citing Restatement (Second) of Torts § 46 cmt. (1965)). Summary judgment is proper where a per-

son does not meet the high standard of proof needed for an intentional infliction of emotional distress claim. *Lee*, 428 N.W.2d at 823.

■ Strauss argues that she has met this high standard. The trial court concluded that Thorne's conduct could not be considered extreme or outrageous by reasonable standards. The trial court also concluded that Strauss had failed to show manifestations of severe emotional distress as a result of the actions of Thorne and Aspen Medical Group.

■ We agree. While certain of Strauss' allegations might support a finding of malice, none of the conduct by Thorne or Aspen Medical Group can be considered extreme or outrageous. Furthermore, Strauss has not shown severe physical manifestations of emotional distress due to the conduct of Thorne and Aspen Medical Group. General embarrassment, nervousness and depression are not in themselves a sufficient basis for a claim of intentional infliction of emotional distress. *Eklund v. Vincent Brass & Aluminum*, 351 N.W.2d 371, 379 (Minn.App. 1984), *pet. for rev. denied* (Minn. Nov. 1, 1984). The trial court did not err in granting summary judgment to respondents on Strauss' claim for intentional infliction of emotional distress.

### DECISION

The trial court properly granted respondents' motion for summary judgment on appellant's claim of intentional infliction of emotional distress. However, the trial court erred in concluding that appellant could not, as a matter of law, show sufficient malice to overcome respondent Thorne's privilege and in granting summary judgment on appellant's claims of defamation and negligent infliction of emotional distress.

Affirmed in part, reversed in part and remanded.

CRIPPEN, Judge (concurring in part, dissenting in part)

I concur in affirming the trial court's decision granting summary judgment to re-

spondents on appellant's claim of intentional infliction of emotional distress. However, the trial court's judgment on appellant's remaining claims should also be sustained.

Before discussing the critical question in this case, these preliminary considerations need to be addressed:

(1) The qualified privilege claimed by respondent is a significant one. The legislature has expressly stated the public policy of this state "to protect children whose health or welfare may be jeopardized through physical abuse, neglect, or sexual abuse" and "to require the reporting of neglect, physical or sexual abuse of children." Minn.Stat. § 626.556, subd. 1 (1990); *see also State v. Odenbrett*, 349 N.W.2d 265, 269 n. 5 (Minn.1984) (state has "a compelling interest in identifying and protecting victims of child abuse"). As he acted toward the ends of this public policy, respondent Thorne is accused of defamation for raising through appropriate channels "the question of abuse of the children with a mother who has acted so irrational toward me." The question of malice—abuse of the privilege—must be considered in the context of the strength of the applicable privilege.

(2) Appellant has the burden to prove abuse of the privilege. *Frankson v. Design Space Int'l*, 394 N.W.2d 140, 144 (Minn.1986). Appellant's claim of malice cannot be viewed in a vacuum but must be supported by the "totality of [the] evidence." *Id.* at 145; *see also Harvet v. Unity Medical Ctr., Inc.*, 428 N.W.2d 574, 579 (Minn.App.1988) (issue should not have been submitted to the jury "where the totality of the evidence did not support a finding of malice").

(3) There is no evidence of damage in this case. Any damage incurred by appellant from her inability to get insurance has been caused by her unilateral decision to cancel her existing health insurance before applying for new insurance. To the extent appellant is seeking to claim presumed damages, her claim is subject to the higher, constitutional standard of actual malice articulated in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349–50, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974).[1]

(4) A decision to remand in this case, as a practical matter, can only be justified by the proposition that the trial court erred in failing to attach significance to the statements made by Don Blyly in his affidavit.

With these considerations in mind, a proper view of the scant evidence of malice offered by appellant reveals that it is insufficient to withstand a motion for summary judgment. Blyly states in his affidavit that Thorne "indicated" that he had made the notations in Blyly's chart to "get back at" Strauss. The words "get back at" are Blyly's words, a statement of his opinion or interpretation; they are not a quotation, nor does Blyly assert that Thorne said words to that effect.[2]

Blyly's statements are inadequate to support a finding of malice for two reasons. First, an affidavit submitted in opposition to a motion for summary judgment cannot simply assert general statements of fact, but rather must allege specific facts which create a genuine issue for trial. *Erickson v. General United Life Ins. Co.*, 256 N.W.2d 255, 258–59 (Minn.1977). Argumentative and conclusory statements are not sufficient. *Urbaniak Implement Co. v. Monsrud*, 336 N.W.2d 286, 287 (Minn. 1983).

1. The Minnesota Supreme Court declined to require "actual malice" before awarding presumed or punitive damages in a private litigants/private issue case and suggested that the *Gertz* rule may apply to media defendants only. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 258 n. 5 (Minn.1980). *But see Culliton v. Mize*, 403 N.W.2d 853, 856 (Minn.App.1987) (refuting expansive reading of *Stuempges* as governing all cases involving private plaintiffs and nonmedia defendants; finding exception for issues of public concern). *See also Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (distinction between subjects of public concern and private interest).

2. The significance of Blyly's failure to quote or specifically paraphrase is underscored by the next sentence of his affidavit which purports to quote Thorne. Blyly states that Thorne "claimed that he had 'worded it very carefully' so that he was not actually accusing [Strauss] of child abuse, but merely raising the possibility." This specific quote actually supports a conclusion of no malice.

Second, a witness may only testify in the form of opinion or inference when it is "rationally based on the perception of the witness" and "helpful" to the fact finder. Minn.R.Evid. 701. Blyly's affidavit provides no foundation or basis for evaluating whether his opinions and interpretations are rationally supported. As a result, it is not admissible and cannot be considered on summary judgment. Minn.R.Evid. 701; Minn.R.Civ.P. 56.05. Accordingly, even though this rationale was not advanced by the trial court, the trial court's failure to give weight to Blyly's statements in his affidavit was proper. This court will affirm the trial court's decision if it can be sustained on any ground. *Schweich v. Ziegler, Inc.,* 463 N.W.2d 722, 727–28 (Minn. 1990) (appellate court will not reverse correct decision simply because it is based on incorrect reason); *Myers ex rel. Myers v. Price,* 463 N.W.2d 773, 775 (Minn.App. 1990) (court of appeals will affirm judgment if it can be sustained on any grounds), *pet. for rev. denied* (Minn. Feb. 4, 1991).

Finally, even if the quoted words of respondent Thorne are viewed more severely, the trial court correctly concluded that they failed to indicate ill will in circumstances where the statement was made and handled in accord with a statutory duty of Thorne's profession, with a reference only to the evidence observed by the doctor, and without publication inconsistent with the duty to report.

Thus, the trial court should be affirmed on all counts. I respectfully dissent from the decision to reverse and remand on two of appellant's claims.