HECHT, Justice
(concurring in part and dissenting in part).
I concur with the majority’s determination that ASI is entitled, on this record, to summary judgment on the plaintiffs’ libel and false light invasion of privacy claims. I also concur in the majority’s determination that the district court properly denied Scott’s motion for summary judgment on the false light invasion of privacy and intentional infliction of emotional distress claims. However, as I believe Scott is also entitled to summary judgment on the plaintiffs’ libel claims, I respectfully dissent from the majority’s contrary determination.
Although I agree with several outcomes reached by the majority, I disagree with the reasoning applied to the libel claims because I consider the current distinction in our defamation law between media and nonmedia defendants unsound and unsupported by our state constitution. Accordingly, because I believe all libel defendants are entitled to the same free speech protections, I would hold that the plaintiffs are not entitled to the traditional presumptions associated with the doctrine of libel per se.
The majority correctly notes that abandonment of the doctrine and reversal is not yet compelled in this case by the United States Supreme Court’s First Amendment jurisprudence. However, my view that a distinction between media and nonmedia defendants is unwarranted has been articulated by some Justices serving on that Court. In Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986), the Court concluded a private figure plaintiff must bear the burden of proving the falsity of speech in a defamation action against a media defendant when the subject of the tortious speech is a matter of public concern. Hepps, 475 U.S. at 776, 106 S.Ct. at 1563, 89 L.Ed.2d at 793 (plurality opinion). Justice Brennan, joined by Justice Blackmun, concurred but wrote separately in Hepps asserting that such a distinction is “irreconcilable with the fundamental First Amendment principle that the inherent worth of speech ... in terms of its capacity for informing the public does not depend upon the identity of the source, whether corporation, association, union, or individual.” Id. at 780, 106 S.Ct. at 1565, 89 L.Ed.2d at 795 (Brennan, J., concurring) (citations and internal quotation marks omitted).[16]
*469 Even before the New York Times decision and the resulting upheaval in defamation law, the common law struggled with the application of traditional labels to “new methods of communication,” such a radio, television, and film. See W. Page Keeton, et al., Prosser and Keeton on Torts § 112, at 787-88 (5th ed.1984) [hereinafter Kee-ton] (describing the difficulty of applying distinctions between “libel” and “slander” to such methods of communication). Technological developments in communications — including the ascension of the Internet and electronic communications-lead me to conclude libel per se is a doctrinal relic that is not worth preserving.[17]
This case demonstrates the increasing difficulty courts in this state and across the nation will have as they attempt to place defendants on a continuum between contract printers and “traditional publishers.” “[P]roliferation of the new electronic media and the consequent difficulties of differentiating between media and nonmedia will likely lead courts away from use of such distinctions in defamation and related law.” 1 Robert D. Sack, Sack on Defamation: Libel, Slander, and Related Problems Introduction, at xlix (4th ed.2012) [hereinafter Sack]; see also Nicole A. Stafford, Comment, Lose the Distinction: Internet Bloggers and First Amendment Protection of Libel Defendants — Citizen Journalism and the Supreme Court’s Murky Jurisprudence Blur the Line Between Media and Non-Media Speakers, 84 U. Det. Mercy L.Rev. 597, 606-10 (2007) (detailing inconsistent approaches of lower courts with respect to treatment of bloggers as media or nonmedia defendants).
When we rejected an argument to eliminate the distinction between media and nonmedia defamation defendants in Vinson v. Linn-Mar Community School District, 360 N.W.2d 108, 118 (Iowa 1984), we stated that a majority of jurisdictions addressing the issue had concluded a distinction between media and nonmedia defendants was warranted when the plaintiff was a private person. However, twenty-eight years later, it appears the opposite is true. Several of the decisions we cited in Vinson have since been limited or overruled, and many other courts have rejected the distinction when they have addressed the issue directly. Schomer v. Smidt, 113 Cal.App.3d 828, 170 Cal.Rptr. 662, 665 (1980), a decision of the California Fourth District Court of Appeal cited in Vinson, held that “the legal concept of slander per se has not been revised in California, except as to media defendants” by the Gertz decision. In 1987, in a case involving a public figure, the same court held “[t]o the extent that language in ... Schomer v. Smidt, ... may be construed as suggesting the constitutional standard does not apply to nonmedia defendants ... it is disapproved.” Miller v. Nestande, 192 Cal.App.3d 191, 237 Cal.Rptr. 359, 364 *470 n. 7 (1987) (citation omitted). Even more recently, the California First District Court of Appeal held that the First Amendment prohibits applying the common-law presumption of falsity to alleged defamatory statements, whether made by media or nonmedia defendants, when the statements regard matters of public interest. Nizam-Aldine v. City of Oakland, 47 Cal.App.4th 364, 54 Cal.Rptr.2d 781, 787-88 (1996) (cataloging cases in California and other jurisdictions which have “rejected the distinction between media and non-media defendants when addressing related First Amendment issues”).
In Vinson, we also cited Retail Credit Co. v. Russell, 234 Ga. 765, 218 S.E.2d 54, 59 (1975), but a current review of that case demonstrates it did not explicitly address the distinction between media and nonme-dia defendants, but instead determined that Georgia law did not recognize a privilege for credit reporting agencies. More recently, the Georgia Supreme Court disregarded the distinction between media and nonmedia defendants in deciding a defamation case brought by a plaintiff who had failed to request a retraction from the defendant who posted a libelous statement on an electronic message board. Mathis v. Cannon, 276 Ga. 16, 573 S.E.2d 376, 384-85 (2002) (noting the distinction between media and nonmedia defendants in that case is “difficult to apply” and “fails to accommodate changes in communications and the publishing industry due to the computer and the Internet”).
In Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 258-59 (Minn.1980), another case cited by this court in Vinson, the Minnesota Supreme Court concluded Gertz did not supplant the Minnesota common law requirement that a private plaintiff prove a nonmedia defendant acted with ill will and improper motives (common law malice) with a New York Times actual malice requirement. More recently, the Minnesota Court of Appeals clarified that “the constitutional protections of New York Times are not contingent upon whether the defendant is a ‘media defendant.’ ” Culliton v. Mize, 403 N.W.2d 853, 856 (Minn.Ct.App.1987) (citing earlier decisions of the Minnesota Supreme Court which required New York Times malice be proven by a public figure plaintiff against a nonmedia defendant).
The Second Restatement of Torts concluded the holding of Gertz should be applied to both media and nonmedia defendants.
As the Supreme Court declares, the protection of the First Amendment extends to freedom of speech as well as to freedom of the press, and the interests that must be balanced to obtain a proper accommodation are similar. It would seem strange to hold that the press, composed of professionals and causing much greater damage because of the wider distribution of the communication, can constitutionally be held liable only for negligence, but that a private person, engaged in a casual private conversation with a single person, can be held liable at his peril if the statement turns out to be false, without any regard to his lack of fault.
Restatement (Second) of Torts § 580B cmt. e, at 225-26 (1977).
Although the majority notes that several jurisdictions have not yet abandoned the doctrine of defamation per se and adopted the Restatement view, one scholar has noted that twenty-two state and federal jurisdictions require proof of fault in defamation actions brought against nonmedia defendants, including Alabama, Arizona, California, Florida, Kansas, Louisiana, Maine, Maryland, New Jersey, New Mexico, New York, Ohio, Tennessee, Texas, Utah, Virginia, and Washington, as well as *471 the Fifth, Eighth, Ninth, Tenth, and District of Columbia Federal Circuits. Sack, § 6:5.1 at 6-21 to 6-22.[18] He further reports that only eight states (including Iowa, Minnesota, Illinois, Oregon, Colorado, Kentucky, and Wisconsin) have expressly held that nonmedia defendants are not entitled to Gertz protections. Id.; see also Snyder v. Phelps, 580 F.3d 206, 219 n. 13 (4th Cir.2009) (“Neither the Supreme Court nor this Court has specifically addressed the question of whether the constitutional protections afforded to statements not provably false should apply with equal force to media and nonmedia defendants .... Any effort to justify a media/nonmedia distinction rests on unstable ground, given the difficulty of defining with precision who belongs to the ‘media.’ ”); Flamm v. Am. Ass’n of Univ. Women, 201 F.3d 144, 149 (2d Cir.2000) (“We agree that a distinction drawn according to whether the defendant is a member of the media is untenable.”); Arthaud v. Mut. of Omaha Ins. Co., 170 F.3d 860, 862 (8th Cir.1999) (requiring a private plaintiff to demonstrate actual reputational harm against a nonmedia defendant); Levinsky’s, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 128 (1st Cir.1997) (relying on Maine law to conclude a defamation plaintiff must always show the defendant acted at least negligently); In re IBP Confidential Bus. Documents Litig., 797 F.2d 632, 642 (8th Cir.1986) (“The fact that cases such as New York Times and Gertz involved media defendants, while arguably relevant in identifying the particular first amendment freedom involved, is in our view irrelevant to the question of what level of constitutional protection that right is to receive.”); Don King Prods., Inc. v. Douglas, 742 F.Supp. 778, 782 n. 4 (S.D.N.Y.1990) (“[A]ll speakers, regardless of status as members of the organized press, are entitled to ... First Amendment protection.”); United Ins. Co. of Am. v. Murphy, 331 Ark. 364, 961 S.W.2d 752, 756 (1998) (adopting a rule that all defamation plaintiffs must establish actual reputational harm); Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cnty., Inc., 130 Ariz. 523, 637 P.2d 733, 738 (1981) (acknowledging adoption of Second Restatement’s formulation of defamation requiring proof of at least negligence on the part of the defendant whether defendant is media or nonmedia); Wattigny v. Lambert, 408 So.2d 1126, 1131 (La.Ct.App.1981) (concluding Gertz protections applied to defamation action against a nonmedia defendant and “will be held liable only if a finding of fault is made”); Lester v. Powers, 596 A.2d 65, 69 (Me.1991) (noting Maine common law requires defamation plaintiff to demonstrate negligence on the part of the defendant, citing Restatement (Second)); Jacron Sales Co. v. Sindorf, 276 Md. 580, 350 A.2d 688, 695-96 (1976) (concluding Gertz restrictions apply to both media and nonmedia defendants); Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 313 (1993) (abandoning the libel per se/per quod distinction and requiring all libel plaintiffs to establish actual reputational harm to recover in a case involving a nonmedia defendant); Durando v. Nutley Sun, 209 N.J. 235, 37 A.3d 449, 458 (2012) (noting New Jersey law expanded free speech protections beyond what is required in federal law such that the “actual-malice standard protects both media and non-media defendants who make statements involving matters of public concern” even if subject of libel is a *472 private person); Bainhauer v. Manoukian, 215 N.J.Super. 9, 520 A.2d 1154, 1168 (N.J.Super.Ct.App.Div.1987) (concluding “common law strict liability has been replaced by, at the least, a negligence standard of fault” and that the distinction between media and nonmedia defendants is irrelevant to the analysis); Smith v. Durden, 276 P.3d 943, 948-49 (N.M.2012) (acknowledging abolition of distinction between libel per quod and libel per se in New Mexico and noting that key to analysis is the status of the plaintiff and holding that all defamation plaintiffs must establish actual harm to reputation to recover without consideration of the media/nonme-dia status of defendant); Ryder Truck Rentals, Inc. v. Latham, 593 S.W.2d 334, 338-39 (Tex.Civ.App.1979) (concluding Gertz protections applied to both media and nonmedia defendants even in cases involving private plaintiffs); Bender v. City of Seattle, 99 Wash.2d 582, 664 P.2d 492, 503-04 (1983) (noting that a private figure defamation plaintiff must establish negligence to recover for defamation in a ease involving a nonmedia defendant, citing Restatement (Second)).[19] To be sure, this survey of the caselaw demonstrates that there is ample authority for the conclusion expressed by the reporters of section 580B of the Restatement.[20] I would expressly adopt it in this case.
I agree with others who have concluded it is unsound to give more protection to media defendants who, in theory, put out vast amounts of speech and can thus cause greater reputational harm than a nonme-dia tortfeasor.
[I]t makes little sense to grant protection to the media without granting similar protection to private individuals. If statements by a newspaper or radio station defaming a prominent attorney, a government-backed scientist, or a well-known socialite, private figures all, must be proved to have been at least negligently false, why should the identical comment made in private correspondence, in a lecture, or even in private conversation, be actionable without fault? Both Justice White and Justice Brennan argued persuasively that statements by nonmedia defendants have an informing function similar to those by members of the press, and that freedom of speech is of equal rank with freedom of the press. One can fairly expect the blogging defendant to prevail on this issue when the Court first confronts him or her as a defendant.
Sack, § 6:5.2, at 6-24 to 6-25 (footnotes omitted).
*473 Further, much can be said for the simplification of defamation law that results from treating media and nonmedia defendants alike. Defamation law has long been viewed as complex, and that perception has only grown since the New York Times decision. As one commentator described:
The law of defamation is in disarray. It is confusing. It is unclear. Most critically, it fails to serve its most important objectives: providing an adequate remedy for reputational harm while allowing sufficient protection for speech. The chaotic nature of defamation law is primarily due to the fact that, at present, defamation involves a juxtaposition of two bodies of law: (1) the archaic state common law of libel and slander, a system arising from medieval roots, and (2) First Amendment jurisprudence, as developed by the courts following the United States Supreme Court’s landmark New York Times Co. v. Sullivan decision in 1964. The latter body of law, of necessity, imposes only federal constitutional limitations on what remains essentially a state cause of action. As a result, the law of defamation resembles a creature fashioned by committee, or worse yet, one fashioned by several independent committees working in separate rooms in different eras with different blueprints-some building up and others chiseling down.
Robert M. Ackerman, Bringing Coherence to Defamation Law Through Uniform Legislation: The Search for an Elegant Solution, 72 N.C. L.Rev. 291, 293 (1994); see also Keeton, § 113, at 808 (“Much could be accomplished by way of simplifying the law and adequately protecting speech in the private area by way of requiring fault with respect to truth or falsity of the matter published in all situations.”); Harvey L. Zuckman, et al., Modern Communications Law § 5.11, at 617 (1999) (describing current defamation law as “almost unworkable” and “failing in its purpose”).
While I believe important policy considerations favor the abandonment of the media/nonmedia distinction, I also believe the text and spirit of article I, section 7 of the Iowa Constitution support the conclusion that the distinction is unsound. I do not share the majority’s belief that the framers’ express imposition of legal responsibility for “abuse” of the right of free expression is more consistent with the doctrine of defamation per se than with a legal standard requiring proof of fault by plaintiffs in all defamation cases.[21] Under either theoretical framework, liability can result from an abuse of the right. A requirement that all defamation plaintiffs must prove fault as a condition of recovery is entirely compatible with the constitutional text. In fact, in Jones v. Palmer Communications, Inc., 440 N.W.2d 884 (Iowa 1989), overruled in part on other grounds by Schlegel v. Ottumwa Courier, 585 N.W.2d 217, 224 (Iowa 1998), we adopted the negligence standard for defamation suits brought by private plaintiffs against media defendants, expressly holding a negligence standard sufficiently protected the explicit constitutional requirement that people be responsible for their abuse of the right of free speech. Jones, 440 N.W.2d at 898.
Further, I believe the elimination of the media/nonmedia distinction and adoption of a fault requirement for all plaintiffs in libel actions would comport with the spirit of our free speech guarantee and would give effect to the first sentence of section *474 7: “Every person may speak, write, and publish his sentiments on all subjects.” Iowa Const, art. I, § 7 (emphasis added). The right of free speech in our constitution is not a right belonging only to the press: It is the right of every person.
The objective of the protections announced in New York Times and Gertz which have so changed the landscape of libel law was avoidance of “intolerable self-censorship” caused by the harsh rule of strict liability in the common law. Gertz v. Robert Welch, Inc., 418 U.S. 323, 340-41, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789, 805-06 (1974). Considering this purpose, and recognizing the right to free speech under our constitution is a right belonging to media and nonmedia speakers alike, I would hold article I, section 7 permits no distinction between media and nonmedia defendants in the law of defamation. As I believe proof of fault is required against all defendants in libel cases under our constitution, I would overrule Vinson and abandon the doctrine of libel per se. Finding myself in agreement with the majority’s determination that the plaintiffs failed to engender a fact question in the summary judgment record on the issue of their actual reputational injury, I would reverse the district court’s ruling on Scott’s motion for summary judgment on the plaintiffs’ libel claims.
APPEL, J., joins this concurrence in part and dissent in part.

. The shifting emphasis across the Court’s decisions on the identity of the defendant and the character of the speech, the respective importance of those two factors in the Supreme Court’s First Amendment jurisprudence, and the resulting confusion have been noted by many critics and commenters. See generally, Robert D. Sack, Sack on Defamation: Libel, Slander, and Related Problems §§ 1:1—1:9, at 1-2 to 1-43 (4th ed.2012); Richard J. Convisor & Roger W. Meslar, Obsolete on its Face: The Libel Per Quod Rule, 45 Ark. L.Rev. 1 (1992); William G. Hagans, Who Does the First Amendment Protect?: Why the Plaintiff Should Bear the Burden of Proof in Any Defamation Action, 26 Rev. Litig. 613 (2007); Patrick J. McNulty, The Law of Defamation: A Primer for the Iowa Practitioner, 44 Drake L.Rev. 639 (1996); Katherine W. Pownell, Defamation and the Nonmedia Speaker, 41 Fed. Comm. L.J. 195 (1989); Ruth Walden & Derigan Silver, Deciphering Dun & Bradstreet: Does the First Amendment Matter in Private Figure-Private Concern Defamation Cases?, 14 Comm. L. & Pol’y 1 (2009); John J. Watkins & Charles W. Schwartz, Gertz and the Common Law of Defamation: Of Fault, Nonmedia Defendants, and Conditional Privileges, 15 Tex. Tech L.Rev. 823 (1984); Rebecca Phillips, Comment, Constitutional Protection for Nonmedia Defendants: Should There Be a Distinction between You *469 and. Larry King?, 33 Campbell L.Rev. 173 (2010).

. The author of a well-known treatise on tort law has described defamation law in colorful terms:
It must be confessed at the beginning that there is a great deal of the law of defamation which makes no sense. It contains anomalies and absurdities for which no legal writer ever has had a kind word, and it is a curious compound of a strict liability imposed upon innocent defendants, as rigid and extreme as anything found in the law, with a blind and almost perverse refusal to compensate the plaintiff for real and very serious harm. The explanation is in part one of historical accident and survival, in part one of the conflict of opposing ideas of policy in which our traditional notions of freedom of expression have collided violently with sympathy for the victim traduced and indignation at the maligning tongue.
Keeton, § 111, at 771-72 (footnote omitted).

. Sack further notes that other jurisdictions "while specifically ruling only on public-figure/public-official cases, have emphasized that distinctions between media and nonme-dia defendants were unfounded, thus suggesting that they would treat both categories of defendants similarly.” Sack, § 6:5.1, at 6-22.

. We also note that with the advent of new methods of mass communication, which make it more difficult to distinguish between media and nonmedia defendants, plaintiffs now have an increased ability to rebut false publications. While the majority argues that contemporary communications make it easier for one to defame another, referencing the low cost and relative ease with which Scott was able to have a professional-looking book printed, I note that the plaintiffs in this case also have the same easy access to mass communication. For a fraction of the cost they have incurred in this lawsuit, Beth and Gail could write their own book and self-publish it rebutting the claims made by Scott. For even less, they could rebut his claims on Facebook or on a blog or on a website created just for that purpose. This democratization of media has only been realized in recent years and is available to all plaintiffs, whether the defendant is a member of the media or not.

. Although the majority catalogues cases from many jurisdictions which still recognize defamation per se, it is notable that in none of the cases cited was the court urged to abandon the doctrine. Further, as the majority acknowledges, many of those jurisdictions which continue to recognize some form of libel per se do not continue to apply all of the presumptions traditionally associated with the tort.

. Indeed, the majority cites cases from other jurisdictions which have concluded similar "abuse” language in their state constitutions allows for varying fault standards to be applied before civil liability may be imposed.